No. 119,116

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

NATHAN A. JARVIS,
*Appellee*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellant*.

SYLLABUS BY THE COURT

1.

An appellate court generally reviews a district court's decision in a driver's license suspension case to determine whether it is supported by substantial competent evidence. Substantial competent evidence is evidence that has both relevance and substance, and provides a substantial basis of fact from which the issues can be reasonably resolved.

2.

In reviewing a district court's factual findings, appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.

3.

Based on the record herein, there is substantial competent evidence to support the district court's finding that the officer lacked reasonable suspicion to initiate the traffic stop that resulted in an administrative driver's license suspension.

4.

Interpretation of a statute is a question of law over which appellate courts have unlimited review.

1

5.

The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings.

6.

When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. Where there is no ambiguity, the court need not resort to statutory construction. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history to construe legislative intent.

7.

Under K.S.A. 2018 Supp. 8-1020(p), on judicial review of the administrative suspension of a person's driver's license, the district court can consider and determine constitutional issues, such as the lawfulness of the law enforcement encounter, and the court's resolution of such an issue will affect its ultimate decision whether to uphold the driver's license suspension.

8.

Based on legislative intent expressed through statute, the district court can consider and determine constitutional issues in a driver's license suspension case in order to decide whether the agency action should be upheld, and the judicially created exclusionary rule plays no part in the district court's decision.

Appeal from Johnson District Court; JAMES F. VANO, judge. Opinion filed May 10, 2019. Affirmed.

2

*Joanna Labastida*, of Legal Services Bureau, Kansas Department of Revenue, for appellant.

*Sheena Foye*, of Wyrsch Hobbs & Mirakian P.C., of Kansas City, Missouri, for appellee.

Before ARNOLD-BURGER, C.J., PIERRON and MALONE, JJ.

MALONE, J.:  The Kansas Department of Revenue (KDR) suspended Nathan A. Jarvis' driver's license after he refused to submit to a breath test. On judicial review, the district court found that the officer lacked reasonable suspicion to stop Jarvis' car. Based on this finding, the district court ruled that K.S.A. 2018 Supp. 8-1020(p) "justifies reversal of the administrative suspension of [Jarvis'] driving privileges." On appeal the KDR first claims the district court erred by finding that the officer lacked reasonable suspicion to stop Jarvis' car. Second, the KDR claims that even if the car stop was unlawful, the district court erred by applying the exclusionary rule to suppress the evidence in this administrative driver's license suspension case.

Based on our review of the record, there was sufficient evidence to support the district court's finding that the officer lacked reasonable suspicion to stop Jarvis' car. And we agree with the district court that on judicial review of the administrative suspension of a person's driver's license, K.S.A. 2018 Supp. 8-1020(p) now authorizes the district court to "consider and determine any constitutional issue, including, but not limited to, the lawfulness of the law enforcement encounter." Based on the district court's finding that the officer unlawfully stopped Jarvis' car, we affirm the district court's decision to set aside the administrative suspension of Jarvis' driving privileges.

FACTUAL AND PROCEDURAL BACKGROUND

On February 6, 2017, Officer Matthew Hirsch of the Merriam Police Department arrested Jarvis for driving under the influence (DUI). Hirsch read the implied consent advisories to Jarvis and he refused to submit to a breath test, resulting in the KDR's

3

administrative suspension of Jarvis' driving privileges. Jarvis requested an administrative hearing and the hearing officer upheld the suspension. Jarvis filed a petition for judicial review, arguing in part that Hirsch had "no lawful grounds to stop [Jarvis'] vehicle" and also that Hirsch had "no reasonable grounds to believe [Jarvis] was operating a vehicle under the influence of alcohol or drugs."

The district court held a trial de novo and Hirsch was the only witness to testify. Hirsch told the court that he stopped Jarvis around 1:45 a.m. after he saw him swerving in his lane and crossing the center line of the road. Hirsch explained the road Jarvis was on had no painted center line, but if it had been there, Jarvis would have crossed it. He said he also saw Jarvis almost hit a mailbox, although he did not include this fact in his report. Hirsch testified that he pulled Jarvis over, intending to give him a warning for swerving and crossing the center line. But as Hirsch spoke with Jarvis, he saw that his eyes were bloodshot, and he smelled alcohol on his breath. Jarvis admitted he had drunk one beer.

Hirsch asked Jarvis to exit his vehicle and he conducted several field sobriety tests. Jarvis successfully performed the "finger-to-nose" and "alphabet" tests. But according to Hirsch, Jarvis failed the walk-and-turn test and showed clues of impairment on the one-leg-stand test. Jarvis refused a preliminary breath test. Hirsch arrested Jarvis for DUI and took him to the Merriam Police Department. There, Hirsch asked Jarvis to submit to an evidentiary breath test, but Jarvis refused. Jarvis later asked about the possibility of taking a blood test, but Hirsch did not administer one.

The video recording from Hirsch's patrol car was played at the hearing and introduced as an exhibit. Hirsch testified that he manually started the video, and he would have done so after seeing a traffic infraction. After watching the video in court, Hirsch said he saw two lane violations, but he could not specify when they had occurred in the video. After hearing the evidence, the district court took the matter under advisement and asked the parties to submit posttrial briefs.

4

On February 9, 2018, the district court filed a 13-page memorandum decision reversing Jarvis' driver's license suspension. The district court began by addressing whether Hirsch had reasonable suspicion for the traffic stop and, on that issue, the district court found that Hirsch's testimony was not credible. The district court noted that Hirsch claimed to have seen Jarvis commit a traffic violation on an unlaned road, but when the video started, Jarvis was on a laned road. The district court also noted that Hirsch testified he made a complete and accurate report of the incident, but his report did not include his observation of Jarvis almost hitting a mailbox. The district court added that Hirsch was unable to pinpoint any traffic violations on the video. The district court found that the video did not show Jarvis' car weaving any more than Hirsch's car. The district court concluded by finding that Hirsch "articulated no credible reasonable suspicion justifying the stop and initial encounter."

The district court then analyzed the effect of the 2016 amendment to K.S.A. 8-1020(p) on Jarvis' driver's license suspension case. The district court found that "[t]he Legislature has made it clear by the 2016 amendment that the initial police encounter is a justiciable issue" in a driver's license suspension case. The district court also found that the new statutory provision would be rendered "meaningless" if constitutional claims had no effect on the district court's decision whether to uphold a driver's license suspension. Based on its finding that Hirsch had no reasonable suspicion to initiate the traffic stop, the district court concluded that K.S.A. 2018 Supp. 8-1020(p) "justifies reversal of the administrative suspension of [Jarvis'] driving privileges."

Although the district court could have ended its analysis there, the court went on to find that after Hirsch initiated the traffic stop, he had reasonable grounds to believe that Jarvis was operating a vehicle while under the influence of alcohol to justify the request for Jarvis to submit to a breath test. The district court also found that Jarvis refused to submit to the breath test and he did not rescind his test refusal. The KDR timely filed a notice of appeal from the district court's judgment.

5

On appeal, the KDR claims the district court erred in reversing Jarvis' driver's license suspension. The KDR first argues that the district court erred by finding that Hirsch lacked reasonable suspicion to stop Jarvis' car. Second, the KDR argues that even if the car stop was unlawful, the district court erred by applying the exclusionary rule to suppress the evidence in this administrative driver's license suspension case. Finally, for the first time on appeal, the KDR argues that even if the exclusionary rule applies in administrative proceedings, this court should remand Jarvis' case to the district court to determine if the good-faith exception applies to uphold the driver's license suspension.

Jarvis responds by arguing that the evidence supports the district court's finding that Hirsch lacked reasonable suspicion to stop his car. Jarvis also argues that the exclusionary rule applies to the administrative suspension of his driving privileges. Finally, Jarvis argues that the good-faith exception to the exclusionary rule does not apply in this instance to uphold the driver's license suspension.

When a driver challenges the administrative suspension of his or her driving privileges for failing to submit to a breath test, the district court holds a de novo trial. K.S.A. 2018 Supp. 8-1020(p). At trial, the driver bears the burden of proving the agency action should be set aside. K.S.A. 2018 Supp. 8-1020(q).

An appellate court generally reviews a district court's decision in a driver's license suspension case to determine whether it is supported by substantial competent evidence. *Swank v. Kansas Dept. of Revenue*, 294 Kan. 871, 881, 281 P.3d 135 (2012). Substantial competent evidence is evidence that has both relevance and substance, and provides a substantial basis of fact from which the issues can be reasonably resolved. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 73, 350 P.3d 1071 (2015). In reviewing a district court's factual findings, appellate courts do not reweigh evidence,

6

resolve evidentiary conflicts, or make witness credibility determinations. *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018). Finally, resolution of the issue before this court also requires interpretation of K.S.A. 2018 Supp. 8-1020(p). Statutory interpretation is a question of law over which appellate courts have unlimited review. See *Hoesli v. Triplett, Inc.*, 303 Kan. 358, 362, 361 P.3d 504 (2015).

REASONABLE SUSPICION FOR THE CAR STOP

The KDR first claims the district court erred by finding that Hirsch lacked reasonable suspicion to stop Jarvis' car. This issue implicates Jarvis' constitutional right to be free of unreasonable searches and seizures by government officials.

The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Section 15 of the Kansas Constitution Bill of Rights contains similar language and provides "the same protection from unlawful government searches and seizures as the Fourth Amendment." See *State v. Neighbors*, 299 Kan. 234, 239, 328 P.3d 1081 (2014).

A traffic stop is a seizure of the driver, and to comply with the Fourth Amendment, the officer conducting the stop must have reasonable and articulable suspicion that the driver has committed, is committing, or is about to commit a crime. See K.S.A. 22-2402(1); *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). Reasonable suspicion represents a minimum level of objective justification and is a lower standard than probable cause. *City of Atwood v. Pianalto*, 301 Kan. 1008, 1011, 350 P.3d 1048 (2015). A traffic infraction provides an objectively valid reason to effectuate a traffic stop. *State v. Jones*, 300 Kan. 630, 637, 333 P.3d 886 (2014).

7

The KDR cites several cases to support its claim that the evidence at trial established reasonable suspicion for a stop. For instance, in *State v. Field*, 252 Kan. 657, 664, 847 P.2d 1280 (1993), the Kansas Supreme Court held that an officer had reasonable suspicion to stop a driver who was weaving in his own lane at 2 a.m., even though the officer did not see the driver commit a traffic violation. Similarly, in *State v. Knight*, 44 Kan. App. 2d 666, 676, 241 P.3d 120 (2010), this court held that an officer had reasonable suspicion to pull over a driver who had been weaving in and out of lanes without signaling and weaving within his lane late at night. See also *State v. Campbell*, No. 109,109, 2013 WL 6726167, at *4 (Kan. App. 2013) (unpublished opinion) (holding that officer had reasonable suspicion to pull over driver who weaved in his lane and varied his speed in the early morning hours).

Based on these cases, the KDR argues that Hirsch's testimony showed he had reasonable suspicion to stop Jarvis. The KDR highlights Hirsch's testimony that he saw Jarvis weaving in his lane and crossing the center line of the road around 1:45 a.m. Hirsch also told the court that he saw Jarvis almost hit a mailbox.

But the KDR ignores the district court's factual finding that Hirsch's testimony was not credible. The district court cited several reasons, based on the evidence, for not believing Hirsch's testimony that Jarvis was weaving on the road. For instance, Hirsch was unable to pinpoint any traffic violations on the video and his report did not include his observation of Jarvis almost hitting a mailbox. In reviewing a district court's factual findings, appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. *Chandler*, 307 Kan. at 668.

In sum, Hirsch's testimony would have provided reasonable suspicion for the car stop had the district court found the testimony credible. But the district court found that Hirsch's testimony was not credible and we will not reweigh the evidence or make witness credibility determinations. Hirsch was the only witness to attempt to establish

8

reasonable suspicion for the car stop. The district court found that Hirsch "articulated no credible reasonable suspicion justifying the stop and initial encounter." We conclude this finding is supported by the evidence in the record.

EFFECT OF THE 2016 AMENDMENT TO K.S.A. 8-1020(p)

Next, the KDR argues that even if the car stop was unlawful, the district court erred by applying the exclusionary rule to suppress the evidence resulting from the unlawful stop in this administrative driver's license suspension case. The KDR points out that in *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, Syl. ¶ 8, 176 P.2d 938 (2008), the Kansas Supreme Court held that the exclusionary rule is not applicable to driver's license suspension proceedings. Jarvis responds by asserting that "*Martin* is no longer good law given the 2016 amendment of K.S.A. 8-1020(p)." Jarvis goes on to argue that the exclusionary rule now applies to the administrative suspension of driving privileges.

To resolve the parties' claims, we will begin by reviewing our Supreme Court's decision in *Martin*. Next, we will examine the 2016 amendment to K.S.A. 8-1020(p), and we will discuss the effect of the statutory amendment on the *Martin* decision. Finally, we will focus on the district court's memorandum decision reversing the KDR's suspension of Jarvis' driving privileges, including whether the district court applied the exclusionary rule to set aside the driver's license suspension, and we will decide whether the district court's ruling was correct under the applicable law.

*Martin v. Kansas Dept. of Revenue*

We begin by reviewing our Supreme Court's decision in *Martin*. In that case, an officer stopped Martin's car based on the officer's erroneous belief that the car's malfunctioning rear brake light violated traffic ordinances. During the stop, the officer suspected that Martin was under the influence of alcohol. Martin later failed field sobriety

9

tests and a chemical breath test. The KDR suspended Martin's driver's license based on the failed breath test. Martin challenged the administrative suspension and ultimately sought judicial review. The district court reversed the driver's license suspension, finding that the officer misinterpreted the law governing brake lights and, as a result, the officer lacked reasonable suspicion to stop Martin's car.

The Court of Appeals reversed the district court's decision, agreeing with the KDR that the propriety of a traffic stop is irrelevant in a driver's license suspension hearing. The Court of Appeals focused on the language of K.S.A. 8-1020(h)(2) that sets forth the scope of the administrative hearing in a driver's license suspension proceeding. Under that statutory provision, whether the officer has reasonable suspicion to initiate a traffic stop is not one of the exclusive issues that can be challenged in an administrative driver's license suspension proceeding. 285 Kan. at 627-28.

On a petition for review, our Supreme Court first analyzed whether the KDR can decide a constitutional claim, such as Martin's claim that the officer lacked reasonable suspicion to stop his car, at an administrative hearing. The court held that in view of the fact that a driver's license is a privilege rather than a right, the exclusion of a Fourth Amendment claim as an issue that can be decided at an administrative suspension hearing under K.S.A. 8-1020(h)(2) does not violate procedural due process. 285 Kan. at 633.

The court went on to hold that the rule that a constitutional issue cannot be *decided* by an administrative agency does not necessarily preclude a driver from *raising* such an issue in that forum. 285 Kan. at 633-34. The court found that a driver's license suspension proceeding implicates the driver's constitutional rights under the Fourth Amendment and § 15 of the Kansas Constitution Bill of Rights to be free from unreasonable searches and seizures. 285 Kan. at 634-36. In Martin's case, the court held that the officer's misunderstanding and misapplication of the ordinance on brake lights

10

resulted in a finding that the officer lacked constitutional authority to stop Martin's car. 285 Kan. at 639.

Despite this finding, the court held that under the facts of Martin's case, the exclusionary rule did not require reversal of Martin's driver's license suspension. 285 Kan. at 639-46. After analyzing cases from the United States Supreme Court and several sister states, our Supreme Court held:

> "The balance outlined by the United States Supreme Court between the benefits and costs of application of the exclusionary rule, when employed in driver's license suspension proceedings, tips in favor of the Department and against Martin and other drivers. The deterrent effect of the rule is already accomplished in the criminal arena. Any additional deterrent effect on law enforcement violation of the Fourth Amendment and § 15 to be gleaned from extension of the rule beyond the criminal DUI setting would be minimal, and it cannot outweigh the remedial imperative of preventing alcohol- and/or drug-impaired drivers from injury or killing themselves or others. Responsive administrative license regulation is essential to that public good. It should not be hamstrung by application of the rule here." 285 Kan. at 646.

But even in *Martin*, our Supreme Court left the door open to applying the exclusionary rule in an administrative proceeding such as a driver's license suspension case. Referring to one of its prior decisions on the application of the exclusionary rule, the court "noted that use of the rule might be warranted if, under a totality of circumstances, police misconduct was egregious. The facts here certainly do not reveal egregious police misconduct. [Citation omitted.]" 285 Kan. at 643.

Based on *Martin*, the KDR argues that under Kansas law, the exclusionary rule does not apply in administrative license suspension proceedings. So even if Hirsch unlawfully stopped Jarvis' car without reasonable suspicion of criminal activity in violation of Jarvis' constitutional rights, the KDR argues that the district court erred by

11

applying the exclusionary rule to suppress the evidence resulting from the unlawful stop in an administrative driver's license suspension case. But Jarvis asserts that "*Martin* is no longer good law given the 2016 amendment of K.S.A. 8-1020(p)." We will next examine that amendment and discuss its effect on our Supreme Court's decision in *Martin*.

*2016 amendment to K.S.A. 8-1020(p)*

Kansas law governing tests for alcohol and drugs for any person who operates or attempts to operate a vehicle in this state, including the administrative license suspension of any driver who fails or refuses such testing, is found at K.S.A. 8-1001 et seq. As part of that statutory scheme, K.S.A. 8-1020 sets forth the procedure for any person to request an administrative hearing to challenge his or her driver's license suspension, followed by judicial review in accordance with the Kansas Judicial Review Act, K.S.A. 77-601 et seq. In 2016, about eight years after *Martin*, the Kansas Legislature made several changes to K.S.A. 8-1020. L. 2016, ch. 69, § 2. One of those changes added this language to subsection (p) addressing judicial review in a driver's license suspension case:

> "Notwithstanding K.S.A. 77-617, and amendments thereto, the court: (1) May also consider and determine any constitutional issue, including, but not limited to, the lawfulness of the law enforcement encounter, even if such issue was not raised before the agency; and (2) shall also consider and determine any constitutional issue, including, but not limited to, the lawfulness of the law enforcement encounter, if such issue is raised by the petitioner in the petition for review, even if such issue was not raised before the agency. If the court finds that the grounds for action by the agency have been met, the court shall affirm." K.S.A. 2018 Supp. 8-1020(p).

Under K.S.A. 2018 Supp. 8-1020(p), on judicial review of the administrative suspension of a person's driver's license, the district court shall "consider and determine" any constitutional issue, including the "lawfulness of the law enforcement encounter," if such issue is raised in the petition for review, even if the issue was not raised before the

12

agency. In fact, the district court *may* consider the constitutional issue even if it is not raised in the petition for review. The "lawfulness of the law enforcement encounter" certainly includes whether the officer has reasonable suspicion to initiate a traffic stop. The provision also states that "[i]f the court finds that the grounds for action by the agency have been met, the court shall affirm." K.S.A. 2018 Supp. 8-1020(p).

The district court applied K.S.A. 2018 Supp. 8-1020(p) in deciding whether to uphold the KDR's suspension of Jarvis' driver's license. Based on its finding that Hirsch had no reasonable suspicion to initiate the traffic stop, the district court concluded that K.S.A. 2018 Supp. 8-1020(p) "justifies reversal of the administrative suspension of [Jarvis'] driving privileges." We must now decide whether the district court correctly applied the statute. As previously stated, interpretation of a statute is a question of law over which appellate courts have unlimited review. *Hoesli*, 303 Kan. at 362.

The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *Hoesli*, 303 Kan. at 362. An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *Ullery v. Othick*, 304 Kan. 405, 409, 372 P.3d 1135 (2016).

When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. *Hoesli*, 303 Kan. at 362. Where there is no ambiguity, the court need not resort to statutory construction. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history to construe legislative intent. *Ullery*, 304 Kan. at 409.

Jarvis argues that the 2016 amendment to K.S.A. 8-1020(p) abrogates our Supreme Court's holding in *Martin* about the application of the exclusionary rule in

13

administrative suspension cases. The KDR argues the opposite. To the extent there is any ambiguity in the statute, the legislative history shows that the amendment was enacted in response to the *Martin* decision to provide licensees with a meaningful opportunity to challenge the legality of the traffic stop in driver's license suspension cases. The Kansas Judicial Council's Criminal Law Advisory Committee report on the proposed amendment includes the following language:

> "The most significant amendments in HB 2289 would change existing law to provide licensees with a meaningful opportunity to challenge the legality of the traffic stop. In *Martin v. Kansas Dept. of Revenue,* 285 Kan. 625, 176 P.3d 938 (2008), the Kansas Supreme Court held that the licensee could not raise the issue of the stop, even if it was unconstitutional, because the statute containing an exclusive list of the issues that could be raised during the administrative hearing did not authorize consideration of whether reasonable suspicion existed to support the traffic stop. *Martin,* 285 Kan. at 631-32. Although the *Martin* case held that the constitutional issue can still be *raised* during the administrative hearing to preserve the issue for an appeal to the district court, the ability to do so is rendered virtually meaningless by the court's refusal to apply the exclusionary rule if the stop is in fact determined to have been unlawful. It has been argued that the statutory omission, combined with the holdings in the *Martin* case, negate 4th amendment protections and allow law enforcement to make stops for any reason or no reason. Although there is no constitutional right to obtain a driver's license, once it has been obtained, the licensee has a property right in the license that cannot be taken away without due process. Critics of the current law and its interpretation in *Martin* argue that the laws of the state should not encourage, or even tolerate, law enforcement officers to act outside the law." Report of Judicial Council Criminal Law Advisory Committee on House Bill 2289 (December 4, 2015).

Turning to judicial canons of construction, when construing statutes to determine legislative intent, appellate courts must consider various provisions of an act *in pari materia* with the view of reconciling and bringing the provisions into workable harmony, if possible. *Friends of Bethany Place v. City of Topeka*, 297 Kan. 1112, 1123, 307 P.3d 1255 (2013). The courts must construe statutes to avoid unreasonable or absurd results

14

and presume the Legislature does not intend to enact meaningless legislation. *Milano's Inc. v. Kansas Dept. of Labor*, 296 Kan. 497, 501, 293 P.3d 707 (2013).

When the Legislature revises an existing law, the court presumes the Legislature intended to change the law as it existed before the amendment. *Stueckemann v. City of Basehor*, 301 Kan. 718, 745, 348 P.3d 526 (2015). Courts generally presume that the Legislature acts with full knowledge about the statutory subject matter, including prior and existing law and judicial decisions interpreting the same. *University of Kan. Hosp. Auth. v. Board of Comm'rs of Unified Gov't*, 301 Kan. 993, 1000, 348 P.3d 602 (2015).

The KDR argues that the 2016 amendment to K.S.A. 8-1020(p) does not abrogate our Supreme Court's holding in *Martin* and that the exclusionary rule does not apply in administrative driver's license suspension proceedings. Before addressing this argument, we will briefly review the exclusionary rule and how it applies in court proceedings.

Neither the Fourth Amendment to the United States Constitution nor § 15 of the Kansas Constitution Bill of Rights expressly prohibits the use of evidence obtained in violation of their respective protections. Instead, to supplement the bare text of the Fourth Amendment, the United States Supreme Court created the exclusionary rule as a deterrent barring the introduction of evidence obtained in violation of the Fourth Amendment in criminal prosecutions. See *Weeks v. United States*, 232 U.S. 383, 34 S. Ct. 341, 58 L. Ed. 652 (1914) (recognizing exclusionary rule in criminal prosecution in federal court); *Mapp v. Ohio*, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961) (applying exclusionary rule in state court prosecution through the Fourteenth Amendment).

The exclusionary rule is generally applied in criminal prosecutions, but its application has been expanded to some administrative proceedings. For instance, in *In re Tax Appeal of Burch*, 296 Kan. 713, 715, 294 P.3d 1155 (2013), our Supreme Court remanded a case to the Court of Tax Appeals for consideration of whether the

15

exclusionary rule applied to the KDR's attempt to collect a drug tax on marijuana that had been unlawfully seized from a person's vehicle. And as we have noted before, in *Martin*, our Supreme Court left the door open to the application of the exclusionary rule in an administrative driver's license suspension case if, under a totality of circumstances, the police misconduct was egregious. 285 Kan. at 643.

To support its argument that the district court erred in applying the exclusionary rule in Jarvis' case, the KDR cites *Whigham v. Kansas Dept. of Revenue*, No. 117,043, 2018 WL 1884742, at *3 (Kan. App. 2018) (unpublished opinion), *rev. granted* 308 Kan. 1602 (2018), in which a panel of this court held the exclusionary rule still does not apply in administrative driver's license suspension cases, even after the 2016 amendment to K.S.A. 8-1020(p). *Whigham* was decided after the district court filed its ruling in Jarvis' case. The defendant in *Whigham* argued that the 2016 amendment to K.S.A. 8-1020(p) abrogated *Martin* because the statutory amendment would be useless if it allowed the district court only to consider constitutional issues without the ability to suppress evidence resulting from an illegal search or seizure. But the *Whigham* court disagreed:

> "[A]s currently written, K.S.A. 2017 Supp. 8-1020(p) does not go far enough to say that the *Martin* holding is no longer good law on this point. As previously cited, this subsection allows a court to consider 'any constitutional issue' and 'the lawfulness of the law enforcement encounter' to 'determine any constitutional issue, including, but not limited to, the lawfulness of the law enforcement encounter.' Here, the Legislature chose the specific language used in this subsection. If it was the Legislature's intent to overrule the *Martin* holding or to allow the suppression of illegally seized evidence in administrative suspension hearings, the Legislature could have clearly expressed this intent. Nevertheless, K.S.A. 2017 Supp. 8-1020(p) contains no language allowing the suppression of this type of evidence in administrative suspension hearings. Because the absence of any such declarative language (allowing the suppression of illegally seized evidence) in K.S.A. 2017 Supp. 8-1020(p), we conclude that Whigham's argument is not currently warranted by the law." 2018 WL 1884742, at *3.

16

Our court's unpublished decision in *Whigham* is not final, as our Supreme Court has granted a petition for review. If we follow the panel's analysis in *Whigham*, then the KDR should prevail in this appeal. But as a general rule, one panel of the Court of Appeals is not bound by a decision of another panel of this court. *Osterhaus v. Toth*, 39 Kan. App. 2d 999, 1008, 187 P.3d 126 (2008). "Although separate panels of the Court of Appeals should strive to be consistent in decision-making, ultimately the court must do its best to decide each case based on the facts and the law, bearing in mind that the Kansas Supreme Court is the final arbiter of all disputes." *State v. Horselooking*, 54 Kan. App. 2d 343, 350, 400 P.3d 189, *rev. granted* 307 Kan. 990 (2017).

*Analysis of the district court's ruling*

The KDR argues that the district court erred by applying the exclusionary rule to suppress the evidence in this administrative driver's license suspension case. But we find it is unnecessary to decide whether the exclusionary rule applies to a driver's license suspension case in Kansas because the district court's ruling here was not based on an application of the exclusionary rule. After the district court found that Hirsch did not have reasonable suspicion to stop Jarvis, the district court went on to analyze the effect of the 2016 amendment to K.S.A. 8-1020(p) on Jarvis' driver's license suspension case. The district court did not *suppress* any evidence presented at the hearing. Instead, the district court set aside the KDR's suspension of Jarvis' driver's license based on the language of K.S.A. 2018 Supp. 8-1020(p), finding that the statute "justifies reversal of the administrative suspension of [Jarvis'] driving privileges."

In reaching its decision, the district court expressly rejected the parties' arguments about whether the exclusionary rule applied to suppress the evidence resulting from the unlawful car stop:

"The parties['] arguments based upon a judicially-created 'exclusionary rule' are misplaced. The issues for this review of the agency action are set by the Legislature. The Legislature has made it clear by the 2016 amendment that the initial police encounter is a justiciable issue in this case. The issue is not couched in terms of an exclusionary rule but rather in terms of the legality of the State action under the statutory Implied Consent law. [The KDR's] argument would nullify that amendment, something the Court is not inclined to do."

Although the district court found that the 2016 statutory amendment abrogated *Martin*'s holding that the exclusionary rule does not apply in administrative proceedings, the district court made it clear that it was relying on the language of the amended statute, not the judicially created exclusionary rule, to reverse the administrative suspension of Jarvis' driving privileges. The district court concluded its analysis by stating:

"The Legislature, rather than deferring to the Court's view on an exclusionary rule as such, has made the constitutionality of the initial police contact part of the judicial review of the administrative agency action and part of the authorization to impact a driver's license privileges under the Implied Consent law. The provision would be meaningless if constitutional claims 'have no practical effect,' as the [KDR] argues. And none of the cases that the [KDR] cites address the 2016 amendment to K.S.A. 8-1020(p). Accordingly, K.S.A. 8-1020(p) justifies reversal of the administrative suspension of [Jarvis'] driving privileges."

We agree with the district court's statutory analysis. Under K.S.A. 2018 Supp. 8-1020(p), on judicial review of the administrative suspension of a person's driver's license, the district court shall "consider and determine" any constitutional issue, including the "lawfulness of the law enforcement encounter," if such issue is raised in the petition for review, even if the issue was not raised before the agency. In fact, the district court *may* consider the constitutional issue even if it is not raised in the petition for review. So in other words, as the district court found, the Legislature has made it clear by the 2016 amendment to K.S.A. 8-1020(p) that the initial police encounter is a justiciable issue in a

18

driver's license suspension case—at least when the case is on judicial review following the administrative hearing. The statute did not provide for the district court to consider and decide the "lawfulness of the law enforcement encounter" when *Martin* was decided.

K.S.A. 2018 Supp. 8-1020(p) also states that "[i]f the court finds that the grounds for action by the agency have been met, the court shall affirm." So under the statute, the "lawfulness of the law enforcement encounter" is a constitutional issue the district court can now decide in a driver's license suspension case, and the court shall affirm the suspension if it finds that the grounds for action by the agency action have been met. If the court shall affirm the agency action if it finds that the grounds for the agency action have been met, then the only logical inference is that the court shall reverse the agency action if it finds that the grounds for the agency action have not been met.

We do not rely on the legislative history of the 2016 amendment to K.S.A. 8-1020(p) to interpret its meaning. Instead, we find the text of the statute is sufficiently clear to convey the Legislature's intent that on judicial review of the administrative suspension of a person's driver's license, the district court can consider and determine constitutional issues, such as the lawfulness of the law enforcement encounter, and the court's resolution of such an issue will affect its ultimate decision whether to uphold the driver's license suspension. And although we find it unnecessary to resort to any canons of statutory construction to ascertain the legislative intent, we agree with the district court that to interpret the statute in any other way would render the amendment meaningless.

To sum up, the district court considered the circumstances of Jarvis' car stop and found that the law enforcement encounter was unlawful. Under K.S.A. 2018 Supp. 8-1020(p), the district court was authorized to find that the grounds for the agency action had not been met, so the court set aside Jarvis' driver's license suspension. The district court's ruling was based on a proper application of the statute to the facts of the case, and the judicially created exclusionary rule played no part in the court's ruling. Based on its

19

finding that Hirsch had no reasonable suspicion to initiate the traffic stop, the district court did not err in concluding that K.S.A. 2018 Supp. 8-1020(p) "justifies reversal of the administrative suspension of [Jarvis'] driving privileges."

*Good-faith exception*

Lastly, for the first time on appeal, the KDR argues that even if the exclusionary rule does apply in administrative driver's license suspension cases, this court should remand Jarvis' case to the district court to determine if the good-faith exception applies. The KDR has made no attempt in its brief to comply with Supreme Court Rule 6.02(a)(5) (2019 Kan. S. Ct. R. 34) to explain why this issue should be considered for the first time on appeal. As a result, the issue is improperly briefed and is deemed abandoned. See *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015). More importantly, because the district court's ruling was not based on an application of the exclusionary rule, there would be no reason to remand this case to the district court to determine if the good-faith exception to the exclusionary rule applies to uphold Jarvis' driver's license suspension.

Affirmed.