NOT DESIGNATED FOR PUBLICATION

No. 119,995

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

TRAVIS KIRK BOURNE,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee.*

MEMORANDUM OPINION

Appeal from Sheridan District Court; KEVIN BERENS, judge. Opinion filed October 11, 2019. Affirmed.

*Charles P. Bradley*, Legal Services Bureau, Kansas Department of Revenue, for appellant.

*Daniel C. Walter*, of Walter & Walter, LLC, of Norton, for appellee.

Before SCHROEDER, P.J., PIERRON and STANDRIDGE, JJ.

PER CURIAM: Travis Kirk Bourne appeals the suspension of his driver's license by the Kansas Department of Revenue (KDOR). He argues the deputy who arrested him for driving under the influence (DUI) lacked reasonable suspicion to contact him. Alternatively, he contends the deputy lacked reasonable grounds to request the evidentiary blood test. Bourne argues we should reverse the district court's order affirming the KDOR's suspension of his driver's license. Because the record does not support his arguments, we affirm.

1

FACTS

On April 29, 2017, at 5:30 a.m., Sherriff's Deputy Adam Babcock responded to a report of a car parked in the ditch on U.S. 24. It is unclear who notified dispatch about the car. Emergency medical services had arrived before Deputy Babcock. Bourne was in the driver's seat and unresponsive. Because Bourne did not respond, the paramedics broke a car window to remove him from the car.

The paramedics were guiding Bourne across the highway into the ambulance when Deputy Babcock arrived. He entered the ambulance where Bourne was receiving treatment. Bourne told the paramedics that he had "8 beers at the Hitching Post." According to Deputy Babcock's testimony, he noticed Bourne had an odor of alcohol coming from him, bloodshot eyes, somewhat slurred speech, delayed responses to the paramedics' questions, and balance problems.

The paramedics determined that Bourne was uninjured. Deputy Babcock asked Bourne to perform a walk-and-turn and one-leg stand test. Deputy Babcock reported that Bourne showed six clues of impairment on the walk-and-turn test and three clues of impairment on the one-leg stand test. Deputy Babcock then requested that Bourne submit to a preliminary breath test (PBT). Bourne passed the PBT. Despite passing the PBT, Deputy Babcock arrested Bourne because he believed that Bourne had been DUI. Bourne ultimately submitted to an evidentiary blood test, which showed he had a blood alcohol content of .19.

Because he had failed the evidentiary blood test, Bourne's driver's license was suspended. Bourne appealed his driver's license suspension to the KDOR. The hearing officer affirmed his suspension. Bourne petitioned the district court for review, arguing that Deputy Babcock lacked reasonable suspicion to initially contact him and lacked reasonable grounds to request an evidentiary blood test.

2

The district court held a hearing on Bourne's petition. Bourne and Deputy Babcock testified. Bourne explained he was sleeping in his running car with the lights off when the paramedics woke him up by breaking the car window. He asserted he was parked on the side of the road, but an officer drove his car into a ditch sometime after he exited it. Bourne testified that when he performed the walk-and-turn and one-leg stand tests, it was very windy and snowy. He noted that a blizzard hit the area later that afternoon.

Deputy Babcock, however, testified he was sure that Bourne did not state he was parked on the shoulder of the road and that someone else moved the car into the ditch. He explained that when he asked Bourne to perform the field sobriety tests, it was snowing but there was only a slight wind. He testified that the fog line they were using to perform the tests was visible. During direct examination, Deputy Babcock testified that Bourne's speech was slurred and delayed when speaking to the paramedics. But during cross-examination, Deputy Babcock admitted that he had not checked the boxes for slurred speech or difficulty communicating on Bourne's DC-27 form.

The district court affirmed the suspension of Bourne's driver's license. The district court rejected Bourne's argument that Deputy Babcock lacked reasonable suspicion to make contact with him for the following reason;

> "[T]he Court finds that the encounter between . . . Deputy Babcock, and Mr. Bourne was not a detention on behalf of the officer. That he engaged Mr. Bourne after he was in the ambulance, or EMT vehicle.
>
> "In discussing why he was along the side of the road – this would be akin to an investigatory encounter, or even, I don't know if I can find it consensual because there was no testimony to that fact, but the officer was engaging in an investigation as to why Mr. Bourne was on the side of the road."

3

Even though Bourne passed the PBT, the district court found that the totality of the circumstances created reasonable grounds for Deputy Babcock to believe that Bourne had been driving his car under the influence. The court accepted Deputy Babcock's observations that Bourne had bloodshot eyes, slurred speech, delayed communication, poor coordination, and failed the walk-and-turn and one-leg stand tests. In making its reasonable grounds finding, the court also emphasized that Bourne admitted to consuming alcohol and operating the vehicle.

ANALYSIS

As he did below, Bourne argues that Deputy Babcock lacked reasonable suspicion to initially contact and detain him. Alternatively, he argues that Deputy Babcock lacked reasonable grounds to request the evidentiary blood test. Bourne asks us to reverse his driver's license suspension. The KDOR contends we should affirm the district court's suspension of Bourne's driver's license because Deputy Babcock did not need reasonable suspicion to contact Bourne, and he had reasonable grounds to request the evidentiary blood test based on the totality of the circumstances. The law and facts of this case establish that the KDOR is correct.

"An appellate court generally reviews a district court's decision in a driver's license suspension case to determine whether it is supported by substantial competent evidence. [Citations omitted.] Only when there is no factual dispute does an appellate court exercise de novo review. [Citations omitted.]." *Swank v. Kansas Dept. of Revenue*, 294 Kan. 871, 881, 281 P.3d 135 (2012). When considering a claim that an officer lacked reasonable grounds to request an evidentiary test, "an appellate court must defer to the district court's factual findings if substantial evidence supports them, but the appellate court must independently review the ultimate legal conclusion regarding whether the officer had reasonable grounds." *Poteet v. Kansas Dept. of Revenue*, 43 Kan. App. 2d 412, Syl. ¶ 1, 233 P.3d 286 (2010).

4

Under the substantial competent evidence standard, "we do not consider other evidence that might support a different result as long as sufficient evidence supports the district court's decision." *Poteet*, 43 Kan. App. 2d at 414. Additionally, when "reviewing a district court's factual findings, appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations." *Jarvis v. Kansas Dept. of Revenue*, 56 Kan. App. 2d 1081, 1086, 442 P.3d 1054 (2019).

*Reasonable Suspicion*

In the past, our Supreme Court has held that the exclusionary rule did not apply in the administrative hearing context. *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 639-46, 176 P.3d 938 (2008), *overruled on other grounds by City of Atwood v. Pianalto*, 301 Kan. 1008, 350 P.3d 1048 (2015). Because the exclusionary rule did not apply, it was irrelevant in the administrative hearing context whether an officer had reasonable suspicion to make a stop.

In 2016, however, the Legislature amended K.S.A. 8-1020(p) to read as follows:

"Notwithstanding K.S.A. 77-617, and amendments thereto, the court: (1) May also consider and determine any constitutional issue, including, but not limited to, the lawfulness of the law enforcement encounter, even if such issue was not raised before the agency; and (2) shall also consider and determine any constitutional issue, including, but not limited to, the lawfulness of the law enforcement encounter, if such issue is raised by the petitioner in the petition for review, even if such issue was not raised before the agency. If the court finds that the grounds for action by the agency have been met, the court shall affirm."

Because of the 2016 amendment, some drivers have argued that the exclusionary rule now applies in the administrative hearing context. But they have made their

arguments with varying results. See *Jarvis*, 56 Kan. App. 2d at 1095-97 (holding that K.S.A. 8-1020(p)'s 2016 amendment now allows drivers to challenge whether law enforcement officers had reasonable suspicion to make the stop); *Whigham v. Kansas Dept. of Revenue*, No. 117,043, 2018 WL 1884742, *3 (Kan. App. 2018) (unpublished opinion), *rev. granted* 308 Kan. 1602 (2018) (holding that the exclusionary rule still does not apply regardless of K.S.A. 8-1020(p)'s 2016 amendment).

Bourne does not address the amended language of K.S.A. 2016 Supp. 8-1020(p). Instead, he assumes he can challenge whether Deputy Babcock had reasonable suspicion to contact him in the administrative hearing context. Even if we assume that Bourne may challenge whether Deputy Babcock had reasonable suspicion to contact him, it is readily apparent that Deputy Babcock's contact with Bourne was appropriate.

Bourne argues that Deputy Babcock lacked reasonable suspicion to contact him because he was parked legally. He also asserts that once Deputy Babcock determined he was medically stable, Deputy Babcock's duties on the scene ended. By making this last argument, Bourne implicitly concedes that Deputy Babcock had valid community caretaking reasons to contact him. Nevertheless, Bourne argues that Deputy Babcock ultimately made an investigatory stop not supported by reasonable suspicion.

"Encounters between law enforcement officers and the public are generally classified under one of the following four categories: consensual encounters; investigatory detentions, also known as *Terry* stops; public safety stops; and arrests." *State v. Martinez*, 296 Kan. 482, 485, 293 P.3d 718 (2013). Below, the district court found that the initial contact between Deputy Babcock and Bourne "was not a detention." The court also inconsistently stated that it was "an investigatory encounter" about why Bourne was on the side of the road. Despite the inconsistent statements, the court's finding that Deputy Babcock did not detain Bourne establishes that the court did not

6

believe Deputy Babcock needed reasonable suspicion to contact Bourne as required for a *Terry* stop.

Instead, it seems the district court believed Deputy Babcock made a public safety stop. Although the court explicitly found that the encounter was involuntary, the court questioned "if [it] can find [the encounter] consensual because there was no testimony to that fact." This statement, along with the court's statement that Deputy Babcock did not detain Bourne, supports that the court believed that Deputy Babcock made a public safety stop.

Appellate courts evaluate public safety stops in three steps: First, we consider whether there were "objective, specific, and articulable facts from which a law enforcement officer would suspect that a citizen is in need of help or is in peril." *State v. Morales*, 52 Kan. App. 2d 179, 182, 363 P.3d 1133 (2015). Second, if such circumstances exist, "the officer may take appropriate action to render assistance if the citizen is in need of aid." Third, "once the officer is assured that the citizen is not in need of help or is not in peril, any actions beyond that constitute a seizure, implicating the protections provided by the Fourth Amendment to the United States Constitution." 52 Kan. App. 2d at 182-83. When making a public safety stop, law enforcement officers' actions must be "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S. Ct. 2523, 37 L. Ed. 2d 706 (1973). Even so, law enforcement officers may ask for identification during a valid safety stop. See *State v. Pollman*, 286 Kan. 881, 888, 190 P.3d 234 (2008) (holding that merely requesting a person's identification does not constitute a seizure).

Deputy Babcock responded to a dispatch call that an unresponsive man was parked in a ditch on U.S. 24. It is undisputed that the paramedics had to break Bourne's car window because Bourne would not wake up. Deputy Babcock arrived on the scene when the paramedics were helping Bourne to the ambulance. When Deputy Babcock was

7

inside the ambulance with Bourne, he overheard Bourne tell paramedics that he had been drinking earlier. At some point, Deputy Babcock asked Bourne for his license and registration. Bourne provided Deputy Babcock with his license and registration from his car.

Based on the preceding facts, we could affirm Deputy Babcock's encounter with Bourne as a public safety stop. When Deputy Babcock arrived on the scene, it was unclear why Bourne's car was in the ditch or if Bourne was injured. Under those facts, Deputy Babcock could approach Bourne and the paramedics to determine if Bourne needed help.

Furthermore, although law enforcement officers must divorce investigatory stops from public safety stops, Deputy Babcock had no duty to ignore obvious indications that Bourne was under the influence of alcohol. In *Nickelson v. Kansas Dept. of Revenue*, 33 Kan. App. 2d 359, 367, 102 P.3d 490 (2004), the court rejected Nickelson's argument that the law enforcement officer wrongly expanded the scope of the public safety stop: "We conclude that [the trooper's] initial contact with Nickelson was justified as a lawful public safety stop. When [the trooper] immediately smelled alcohol, the trooper had grounds to detain Nickelson for further investigation." See also *State v. Weaver*, No. 119,956, 2019 WL 2147678, at *9 (Kan. App. 2019) (unpublished opinion) (agreeing that a law enforcement officer during a public safety stop need not ignore "'obvious indications of criminal activity until the public safety investigation is concluded before . . . considering whether reasonable suspicion of criminal activity [exists]'"). Thus, Deputy Babcock did not have to ignore Bourne's voluntary admission of drinking or physical indicators supporting intoxication when determining whether Bourne was in need of help. Moreover, there is no evidence that Deputy Babcock deviated from his community caretaking duties by investigating Bourne for a crime before the paramedics had determined Bourne no longer needed assistance.

8

Although the district court did not find the encounter voluntary, we could affirm because the initial encounter was a voluntary encounter during which Deputy Babcock acquired reasonable suspicion that Bourne was DUI. See *Gannon v. State*, 302 Kan. 739, 744, 357 P.3d 873 (2015) (holding that an appellate court may uphold the district court's ruling when it reaches the correct result despite assigning erroneous reasons for its decision). "Voluntary encounters are not considered seizures and do not trigger the protections of the Fourth Amendment." *State v. Williams*, 297 Kan. 370, 376, 300 P.3d 1072 (2013). During voluntary encounters, law enforcement officers may approach a person in a public place and ask that person questions. "[A] voluntary encounter is not transformed into a seizure simply because an individual responds to questions or provides identification when approached and questioned by an officer." 297 Kan. at 376. An officer's encounter with a person is voluntary if under the totality of the circumstances, the officer's conduct establishes to a reasonable person that the person can refuse the request or end the encounter. *State v. Reiss*, 299 Kan. 291, 297-98, 326 P.3d 367 (2014).

We could categorize Deputy Babcock's encounter with Bourne as voluntary because Bourne entered the ambulance voluntarily while the paramedics examined him. Although Deputy Babcock entered the ambulance as well, there is no evidence that Deputy Babcock told Bourne he could not leave. Deputy Babcock never kept Bourne's license and registration in an attempt to detain him. In addition, Deputy Babcock did not interrogate Bourne about DUI. Instead, Deputy Babcock overheard Bourne tell the paramedics that he had been drinking.

In summary, Deputy Babcock's contact with Bourne was a public safety stop because when Deputy Babcock arrived on the scene, it was unclear whether Bourne was in distress. Alternatively, Deputy Babcock and Bourne's contact was voluntary because Deputy Babcock never detained Bourne. Either way, during his contact with Bourne, Deputy Babcock overheard Bourne's voluntary admission to earlier alcohol consumption. He also witnessed physical indicators that Bourne was under the influence. Based on

9

Bourne's voluntary admission and Deputy Babcock's observations, Deputy Babcock had reasonable suspicion to make an investigatory stop after the paramedics determined that Bourne did not need medical treatment.

*Reasonable Grounds*

A law enforcement officer may ask a driver to submit to an evidentiary blood test if the officer has reasonable grounds to believe that the person was DUI and the person had been arrested. K.S.A. 2016 Supp. 8-1001(b)(1). When a driver fails an evidentiary blood test, the driver may challenge whether the "law enforcement officer had reasonable grounds to believe the person was operating a vehicle while under the influence of alcohol or drugs, or both . . ." at the driver's administrative hearing. K.S.A. 2016 Supp. 8-1020(h)(3)(A). "The determination of reasonable grounds is similar to a determination of probable cause to make an arrest." *Poteet*, 43 Kan. App. 2d at 416 (citing *Bruch v. Kansas Dept. of Revenue*, 282 Kan. 764, 775, 148 P.3d 538 [2006]). "Probable cause to arrest is the reasonable belief, drawn from the totality of information and reasonable inferences available to the arresting officer, that the defendant has committed or is committing a specific crime." *State v. Johnson*, 297 Kan. 210, 222, 301 P.3d 287 (2013).

Bourne argues that Deputy Babcock lacked reasonable grounds to request the evidentiary blood test because Deputy Babcock did not witness him commit a traffic violation; did not check slurred speech or difficulty in communicating on the DC-27 form; made him perform the walk-and-turn and one-leg stand test in adverse weather; and he passed the PBT. It is readily apparent that Bourne's argument hinges on us reweighing the facts in his favor.

Once again, when determining whether substantial competent evidence supports the district court's finding that a law enforcement officer had reasonable grounds to request an evidentiary blood test, we do not consider evidence supporting an alternative

10

result so long as sufficient evidence supports the district court's decision. *Poteet*, 43 Kan. App. 2d at 414. Bourne ignores that the following evidence provided Deputy Babcock with reasonable grounds to request the evidentiary blood test: (1) Bourne was asleep in his car with the engine running; (2) the car was in a ditch off of the highway; (3) he woke up only after the paramedics had broken the window; (4) Bourne admitted to paramedics he had consumed eight beers; (5) Bourne displayed physical indicators that he was DUI—bloodshot eyes, slurred speech, delayed communication, and balance problems; and (6) he failed the walk-and-turn and one-leg stand tests.

Bourne is asking us to reweigh the evidence when he argues that no one saw him commit a traffic violation, Deputy Babcock failed to check the boxes for slurred speech and difficulty in communicating on the DC-27 form, and the validity of his field sobriety tests was based on the allegedly adverse weather. He ignores that Deputy Babcock knew from dispatch that Bourne was the unresponsive man in the driver's seat of the car parked in the ditch. Furthermore, Bourne's argument about Deputy Babcock not checking slurred speech or difficulty in communicating on the DC-27 form ignores that the district court found that Deputy Babcock had reasonable grounds to request the evidentiary blood test, in part, because Bourne had slurred speech and delayed responses to the paramedics' questions. The court also accepted Deputy Babcock's testimony that the weather conditions "were such . . . to properly administer the field sobriety tests of the walk-and-turn, as well as the one-leg stand [test], and that those were failed by Mr. Bourne." For each of Bourne's arguments, the district court made a credibility determination in Deputy Babcock's favor that we cannot review. See *Jarvis*, 56 Kan. App. 2d at 1086.

Even if we did not consider the results of Bourne's walk-and-turn and one-leg stand tests because of the alleged adverse weather, Deputy Babcock had reasonable grounds to believe that Bourne had driven while intoxicated. Paramedics broke Bourne's car window after attempts to wake him up had failed. Bourne had parked his car in a ditch off of a highway and left it running. Bourne had admitted he drank eight beers

11

before driving. Bourne also provided physical indicators that he was DUI—bloodshot eyes, slurred speech, delayed communication, and balance problems. The fact that Bourne passed the PBT in conjunction with the preceding evidence supported that Bourne might also be under the influence of illegal drugs the PBT could not detect. Finally, because reasonable grounds to request an evidentiary blood test is based on the totality of the circumstances, the district court correctly noted that the fact Bourne passed the PBT did not give him a "get-out-of-jail-free card."

Because the totality of the information supported that Bourne had driven while intoxicated, Deputy Babcock had reasonable grounds to ask him to take an evidentiary blood test. We affirm the district court's decision to uphold the suspension of Bourne's license.

Affirmed.