No. 102,354

IN THE MATTER OF THE APPEAL OF BURCH, IAN A. From an Order of the DIVISION OF TAXATION on the Assessment of Controlled Substances Tax.

(294 P.3d 1155)

Opinion filed February 22, 2013.

*Caleb Boone*, of Hays, argued the cause and was on the briefs for appellant.

*James A. Bartle*, of legal services bureau, Kansas Department of Revenue, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

Moritz, J.: Ian A. Burch appeals from the decision of the Court of Tax Appeals (COTA) granting summary judgment to the Kansas Department of Revenue (KDOR) on its assessment of taxes and civil penalties against Burch under the Kansas Drug Tax Act, K.S.A. 79-5201 *et seq.* Burch argues COTA erred in failing to consider and apply the exclusionary rule to the drugs upon which the taxes were assessed, and in failing to invalidate the tax assessment.

We conclude COTA erroneously interpreted K.S.A. 2012 Supp. 79-5205(b), which provides that KDOR's tax and penalty assessment is presumed valid, to preclude consideration of the exclusionary rule. Consequently, COTA erred in granting summary judgment to KDOR, and we remand the case to COTA for consideration of the exclusionary rule and the factors appropriate to that consideration, as outlined herein.

## Traffic Stop and Resulting Criminal Charges

Kansas Highway Patrol Trooper Steve Harvey was patrolling I-70 in Trego County when he spotted a motor home that did not appear to have a license tag. Harvey pulled over the motor home and approached the vehicle. As he did so he noticed a temporary tag in the back window that the window's heavy tint had obscured. Nevertheless, Harvey asked the driver, Kurt Christiansen, for his driver's license, vehicle registration, and temporary tag.

The temporary tag identified Burch, who was a passenger, as the owner of the vehicle. As dispatch ran Christiansen's license, Harvey spoke with Burch, obtained his license, and provided it to dispatch. In response to Harvey's questions about the group's travel plans, Burch said that someone had flown from the New England states to Florida to pick up the motor home, and he and seven other adults were traveling in it to Colorado. At some point, dispatch informed Harvey that Burch or Christiansen had a drug conviction.

In investigating the validity of the temporary tag, Harvey compared Burch's license to the information on the tag and determined the information matched. Harvey also determined the description on the temporary tag matched the vehicle. But Harvey did not provide dispatch with the temporary tag information, and during

the subsequent suppression hearing Harvey admitted he had no particularized suspicion that the motor home was stolen.

Despite his lack of any particularized suspicion of a crime, Harvey continued to detain the motor home and its passengers, asking to see the vehicle's VIN plate. When the driver and passengers, including Burch, advised the officer they did not know where to find the VIN plate, Harvey responded by instructing the passengers to open the side door so he could look inside the vehicle for the VIN plate.

As Harvey stood on the step of the motor home to check the frame of the vehicle for the VIN plate, he saw an open alcoholic beverage. Once inside, he noticed wrapping papers, which he recognized as drug paraphernalia. Two other officers eventually arrived and assisted Harvey while he conducted a full search of the vehicle, revealing marijuana, ecstasy, psilocybin mushrooms, additional drug paraphernalia, and approximately $15,000 in cash.

The State filed four felony and two misdemeanor charges against Burch. Burch moved to suppress the drugs and paraphernalia found in the vehicle, arguing Harvey impermissibly extended the traffic stop in violation of the Fourth Amendment to the United States Constitution. The district court agreed, concluding that while Harvey had legally stopped the vehicle to inquire about the temporary tag, once he had obtained the information necessary to dispel his concern, the continued detention of the vehicle and its passengers became unlawful. Thus, the district court held Harvey had no reasonable suspicion that a crime had been or was being committed when he discovered the drugs and paraphernalia. Because Harvey unlawfully extended the scope and length of the stop, the district court suppressed the evidence found in the vehicle, and the State dismissed the criminal charges against Burch without prejudice.

## THE TAX ASSESSMENT AND RELATED PROCEEDINGS

Approximately 1 week after the district court dismissed Burch's criminal charges, Harvey "requested [KDOR's] assistance for the collection of drug taxes and seizure of approximately $17,000 cash." KDOR's Director of Taxation responded by issuing a tax assess-

ment notice indicating Burch owed $17,761 in taxes and penalties on the drugs found in his motor home. Burch objected to the assessment by requesting an informal conference with the Secretary of KDOR. Following a hearing, the Secretary's designee upheld the assessment.

*Burch's Motion for Summary Judgment*

Burch appealed the assessment to COTA's predecessor, the Board of Tax Appeals (BOTA), and subsequently moved for summary judgment. Relying upon *In re Appeal of Kasel*, No. 93-528, Director of Taxation of the Kansas Department of Revenue Order, dated April 26, 1994, Burch argued the exclusionary rule applied to the unlawfully seized drugs and invalidated the tax assessment.

In *Kasel*, the director examined several factors in determining whether the exclusionary rule applied, including whether the potential tax assessment was in the officer's "zone of primary interest" at the time of the Fourth Amendment violation, whether KDOR participated or colluded in the case, whether the officer acted in good faith, and whether the officer's actions were motivated by the potential for tax assessment. *Kasel*, No. 93-528, p. 6. Applying these considerations, the director in *Kasel* determined the exclusionary rule should be applied to deter future violations of the Fourth Amendment.

Burch pointed out that shortly after *Kasel*, the legislature modified K.S.A. 2012 Supp. 79-5211 to increase the percentage of the assessment remitted to law enforcement agencies assisting in the investigation from 50 percent to 75 percent. L. 1994, ch. 259, sec. 2. Burch argued that because of this change to the statute, the Highway Patrol potentially had greater motivation to pursue the tax assessment in this case than in *Kasel*. Consequently, Burch reasoned that the facts of this case presented an even stronger basis for BOTA to invalidate the tax assessment.

KDOR did not contest Burch's suggestion that the exclusionary rule could be applied in the civil tax context. Instead, KDOR argued the rule did not apply here because the constitutional violation was not egregious. Alternatively, KDOR contended that under the factors utilized in *Kasel*, Harvey's actions were not motivated

by tax collection. Thus, KDOR reasoned that the application of the exclusionary rule would not deter future Fourth Amendment violations.

In denying Burch's summary judgment motion, BOTA acknowledged the strength of Burch's argument regarding Harvey's potential motivation in acting unlawfully. Nevertheless, BOTA concluded questions of fact precluded summary judgment, including whether suppressing the drugs would deter police misconduct and whether the "deterrence would outweigh the consequences of withholding reliable information" from the tax appeal process.

*KDOR's Motion for Summary Judgment*

Approximately 1 year after BOTA denied Burch's summary judgment motion, KDOR filed its own motion for summary judgment with the agency, which by then had become COTA. In its motion, KDOR argued that the exclusionary rule did not apply as a matter of law. Specifically, KDOR reasoned that because Burch conceded he possessed the drugs upon which the taxes were assessed, KDOR had established a prima facie case for assessment under K.S.A. 2012 Supp. 79-5205(b), entitling it to summary judgment. KDOR contended the statute precluded Burch from relying on the illegal nature of the search to challenge this prima facie assessment.

In response, Burch renewed his own motion for summary judgment, maintaining that the exclusionary rule applied to bar unlawfully obtained evidence and thus invalidated the tax assessment. Burch questioned Harvey's stated motivation in unlawfully entering the vehicle (*i.e.*, to obtain the VIN number) and suggested that a well-trained officer like Harvey would have suspected the presence of drugs based upon the "erratic travel plans" described by its occupants.

COTA granted KDOR's summary judgment motion, concluding that while Burch argued facts relating to application of the exclusionary rule, he failed to controvert facts regarding "the predicate facts of the matter, *i.e.*, the tax assessment itself." COTA reasoned that K.S.A. 2012 Supp. 79-5205(b) makes any statement filed by the Director of Taxation prima facie evidence of the facts contained

in the statement, thereby creating a presumption of the assessment's validity. Thus, COTA held that when the Director of Taxation filed a statement of the validity of the assessment against Burch, KDOR established a prima facie case under K.S.A. 2012 Supp. 79-5205(b).

Further, COTA determined that K.S.A. 2012 Supp. 79-5205(b) burdens the taxpayer with challenging the presumption, and it concluded that any such challenge could not include assertion of the exclusionary rule. COTA reasoned that because the statute is silent regarding application of the exclusionary rule, the legislature abrogated the rule in the civil tax context, making Burch's arguments regarding the exclusionary rule and the factors applied in *Kasel* irrelevant.

In granting KDOR summary judgment, COTA also denied Burch's renewed motion for summary judgment. Subsequently, COTA denied Burch's petition for reconsideration, prompting Burch to petition the Court of Appeals for judicial review. Burch identified the agency actions at issue as COTA's second summary judgment decision and its denial of his motion for reconsideration of that decision. We transferred this case on our own motion pursuant to K.S.A. 20-3018(c).

## ANALYSIS

In this appeal of COTA's decision granting summary judgment to KDOR, Burch argues COTA erred by failing to consider whether the exclusionary rule warrants suppression of the drugs, thereby invalidating the tax assessment. At oral argument, Burch's counsel indicated he seeks reversal of COTA's summary judgment decision and remand of this case to COTA. Although the record is unclear as to the extent, if any, of discovery conducted at the administrative level, Burch's counsel asserted to this court that Burch has not yet had an opportunity to question Harvey about his motivations in unlawfully extending the scope of the stop, or to articulate to COTA why those motivations, coupled with other considerations, justify applying the exclusionary rule to suppress the drugs and invalidate the tax assessment.

*The Kansas Drug Tax Act*

Before considering the merits of this appeal, we find it helpful to briefly review the statutory scheme relied upon by KDOR to assess Burch taxes and penalties, the Kansas Drug Tax Act, K.S.A. 79-5201 *et seq.* (the Act).

The Act permits the State to tax marijuana and controlled substances when a dealer, as defined in the Act, in "any manner acquires or possesses" more than the minimum amount of the substance set forth in the Act. K.S.A. 79-5201(a)-(c); K.S.A. 79-5202. The Act prohibits the possession of a taxed substance unless the tax has been paid as evidenced by an official stamp or other indicia. K.S.A. 79-5204(a). The amount of the tax is based upon the weight, unit, or portion of marijuana or controlled substances possessed. K.S.A. 79-5202(a).

Any dealer who violates the Act is subject to a penalty equal to 100 percent of the tax imposed as well as the initial tax amount. K.S.A. 79-5208. Once the Director of Taxation determines a dealer has not paid the drug tax, a notice, which includes a description of the tax, penalties, and interest, is mailed or served on the dealer. K.S.A. 2012 Supp. 79-5205(a). In making the assessment, K.S.A. 2012 Supp. 79-5205(c) provides that" the director of taxation may consider but shall not be bound by a plea agreement or judicial determination made in any criminal case."

Key to this case, the Act also presumes the validity and correctness of the assessment made by the Director of Taxation.

"The tax, penalties and interest assessed by the director of taxation are presumed to be valid and correctly determined and assessed. The burden is upon the taxpayer to show their incorrectness or invalidity. Any statement filed by the director of taxation with the court or any other certificate by the director of taxation of the amount of tax, penalties and interest determined or assessed is admissible in evidence and is prima facie evidence of the facts it contains." K.S.A. 2012 Supp. 79-5205(b).

*Preliminary Matters*

Before addressing the legality of COTA's summary judgment motion, we note that, as pointed out by KDOR, several of Burch's arguments were not properly briefed and are therefore not properly before this court. *State v. Torres*, 280 Kan. 309, Syl. ¶ 7, 121

P.3d 429 (2005) ("Simply pressing a point without pertinent authority, or without showing why it is sound despite a lack of supporting authority, . . . is akin to failing to brief an issue."). Issues not briefed are deemed abandoned. *State v. Holmes*, 278 Kan. 603, 622, 102 P.3d 406 (2004). Thus, we do not reach Burch's assertions regarding the constitutionality of K.S.A. 2012 Supp. 79-5211 or application of double jeopardy, res judicata, or collateral estoppel.

Additionally, KDOR contends this court lacks jurisdiction over the merits of Burch's exclusionary rule argument because Burch's petition for review omitted any reference to the denial of his summary judgment motion. But as Burch points out, he sought review of COTA's order granting KDOR's summary judgment motion, and in that order, COTA explicitly noted Burch's renewal of his own summary judgment motion and its denial of that motion. Therefore, Burch's exclusionary rule arguments are properly before us.

*COTA erred in interpreting K.S.A. 2012 Supp. 79-5205 as precluding consideration of the exclusionary rule.*

Burch argued to COTA that because the drugs were seized in violation of the Fourth Amendment, the drugs should also be suppressed in the civil tax proceeding under the exclusionary rule. "The exclusionary rule is a judicially created remedy, designed to deter the government from engaging in unconstitutional conduct. [Citations omitted.]" *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 640, 176 P.3d 938 (2008).

COTA determined K.S.A. 2012 Supp. 79-5205(b) precluded it from considering application of the exclusionary rule because the statute presumes the validity of the Director's assessment. We must first consider whether COTA correctly interpreted K.S.A. 2012 Supp. 79-5205(b).

This court reviews COTA's actions pursuant to the Kansas Judicial Review Act, K.S.A. 77-601 *et seq.*, and can grant relief if the agency erroneously interpreted or applied the law. K.S.A. 2012 Supp. 77-621(c)(4). Here, we are called upon to review COTA's statutory interpretation, a question of law over which we exercise unlimited review. See *State v. Dale*, 293 Kan. 660, 662, 267 P.3d

743 (2011); see also *Kansas Dept. of Revenue v. Powell*, 290 Kan. 564, 567, 232 P.3d 856 (2010) (stating this court gives no deference to an agency's interpretation of a statute).

Further, in reviewing a statute that is plain and unambiguous we will not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it. *Double M Constr. v. Kansas Corporation Comm'n*, 288 Kan. 268, 271, 202 P.3d 7 (2009). Statutes that impose a tax are strictly construed in favor of the taxpayer. *Winnebago Tribe of Nebraska v. Kline*, 283 Kan. 64, 77, 150 P.3d 892 (2007).

In granting KDOR summary judgment, COTA relied on the language in K.S.A. 2012 Supp. 79-5205(b) creating a presumption of validity as to any assessment filed by the Director of Taxation. COTA reasoned that a legislature can abrogate the judicially created exclusionary rule and that the Kansas Legislature had done so by providing that the Director's statements are prima facie evidence of the assessment's validity. This presumption of validity, COTA determined, made Burch's argument regarding the exclusionary rule superfluous. COTA found it had no statutory authority to "eschew clear evidentiary rules prescribed by the Kansas Legislature in favor of the exclusionary rule in civil drug tax cases."

We do not agree that the legislature's silence regarding application of the exclusionary rule precludes the rule's application. Simply stated, COTA's interpretation of the statute requires us to read into the statute what is not there. See *Double M Constr.*, 288 Kan. at 271-72 (quoting *In re K.M.H.*, 285 Kan. 53, 79, 169 P.3d 1025 [2007], *cert. denied* 555 U.S. 937 [2008], and providing courts " 'will not read the statute to add something not readily found in it' "). While K.S.A. 2012 Supp. 79-5205(b) burdens the taxpayer with rebutting the prima facie evidence, or presumption, of the assessment's validity, it does not by its plain language preclude consideration of the exclusionary rule, and COTA erred by holding otherwise.

Further, COTA apparently reasoned that because K.S.A. 2012 Supp. 79-5205(c) permits the Director of Taxation to consider, but not be bound by, a plea agreement or judicial determination made

in any criminal case, the legislature precluded COTA from consideration of the exclusionary rule. We disagree with this conclusion.

Significantly, KDOR did not argue or propose the restrictive interpretation of K.S.A. 2012 Supp. 79-5205(c) adopted by COTA. In fact, at oral argument before this court, KDOR conceded that COTA erred in finding that K.S.A. 2012 Supp. 79-5205(c) barred application of the exclusionary rule. Instead, KDOR recognized that section (c) allows the Director of Taxation, in determining whether to make an assessment in the first instance, to consider but not be bound by a judicial determination made in any criminal case. In short, this provision says nothing about whether COTA can consider application of the exclusionary rule once the Director establishes a prima facie assessment.

By arguing that the circumstances of the illegal stop of his motor home require application of the exclusionary rule, Burch essentially challenges the validity of the tax based on the means of discovery of the controlled substance upon which the tax was assessed, *i.e.*, an illegal search. That is exactly what the statute burdens the taxpayer with doing—rebutting the prima facie evidence of the validity of the assessment.

We conclude K.S.A. 2012 Supp. 79-5205(b) permits a taxpayer to challenge the prima facie validity of an assessment, including consideration of whether the circumstances of an illegal stop require application of the exclusionary rule, and COTA erred in holding otherwise. Further, COTA's erroneous legal conclusion led it to inappropriately disregard Burch's factual arguments regarding the validity of the assessment. Therefore, we reverse COTA's decision granting summary judgment to KDOR and remand to COTA for additional consideration as outlined below.

*On remand, COTA should consider several factual circumstances in determining whether the exclusionary rule justifies suppressing the drugs.*

Because we have not previously discussed application of the exclusionary rule in the context of a civil tax proceeding, we provide the following discussion to guide COTA in its consideration of the rule on remand.

The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." The Fourth Amendment itself, however, does not preclude the use of evidence obtained in violation of its command. *Davis v. United States*, 564 U.S. 229, 236, 131 S. Ct. 2419, 180 L. Ed. 2d 285 (2011). The judicially created exclusionary rule seeks to deter unconstitutional conduct by suppressing illegally obtained evidence. *Martin*, 285 Kan. at 640.

However, because a Fourth Amendment violation is "fully accomplished" at the time of an illegal search or seizure, the exclusion of evidence from a later proceeding cannot cure the invasion of constitutional rights previously suffered. *Martin*, 285 Kan. at 640. Therefore, the exclusionary rule applies only in contexts "where its remedial objectives are thought most efficaciously served." *United States v. Calandra*, 414 U.S. 338, 348, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974); see *Tirado v. C.I.R.*, 689 F.2d 307, 310 (2d Cir. 1982) ("Since use of the exclusionary rule impairs the search for truth even as it aids observance of constitutional limitations, standards for use of the rule must balance public needs against the claims of individual liberty.").

The goal of the exclusionary rule is deterrence; therefore, whether the exclusionary rule should be applied cannot turn solely on whether the proceeding is civil or criminal. In other words, the simple fact that this is a civil proceeding does not mean the exclusionary rule cannot apply. See *Tirado*, 689 F.2d at 313-14. Rather, whether the exclusionary rule can be applied depends on something more. As the Supreme Court explained, "Real deterrent value is a 'necessary condition for exclusion,' but it is not 'a sufficient' one. [Citation omitted.] The analysis must also account for the 'substantial social costs' generated by the rule. . . . For exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs." *Davis*, 564 U.S. at 237.

Martin v. Kansas Dept. of Revenue

Although this court has not considered application of the exclusionary rule in civil tax proceedings, we have considered it in the context of administrative driver's license proceedings. See *Martin*, 285 Kan. at 639-46. In *Martin*, an officer conducted a traffic stop based on the officer's erroneous belief that the vehicle's malfunctioning rear brake light violated traffic ordinances. During the stop, the officer suspected Martin was under the influence of alcohol; Martin later failed field sobriety tests and a chemical breath test. After KDOR sought to suspend Martin's driver's license based on the failed chemical breath test, Martin challenged the constitutionality of the traffic stop before KDOR and sought application of the exclusionary rule. 285 Kan. at 627-29.

In considering whether the exclusionary rule should be applied in administrative driver's license proceedings, this court considered the Supreme Court's decision in *United States v. Janis*, 428 U.S. 433, 96 S. Ct. 3021, 49 L. Ed. 2d 1046 (1976). There, the Supreme Court balanced the benefits and costs of the exclusionary rule and refused to apply the exclusionary rule to a federal civil tax proceeding in which federal officials used evidence that had been unlawfully seized by state officials. 428 U.S. at 454-55. Relying on *Janis* and other Supreme Court precedent, this court in *Martin* weighed the benefit of deterring police conduct with the cost of losing probative evidence and determined that the benefits from application of the exclusionary rule would not outweigh "the remedial imperative of preventing alcohol- and/or drug-impaired drivers from injury or killing themselves or others." 285 Kan. at 646. But the court did not suggest that it would never apply the exclusionary rule in an administrative setting. Instead, it specifically noted its prior holding that "use of the rule might be warranted if, under a totality of circumstances, police misconduct was egregious." 285 Kan. at 643 (citing *State v. Turner*, 257 Kan. 19, 27, 891 P.2d 317 [1995]). The court then stated: "The facts here certainly do not reveal egregious police conduct." 285 Kan. at 643.

Notably, the two dissenting justices in *Martin* disagreed with the majority's analysis as to the outcome of the balancing test but *not*

with the majority's consideration of that test. See *Martin*, 285 Kan. at 647 (Rosen, J., dissenting) ("I agree with the majority's well-reasoned opinion up to the point that it declines to apply the exclusionary rule in this context. . . . For me, the balance tips in favor of Martin and requires reversal of his suspension.").

### "Zone of Primary Interest" Analysis

As discussed in *Martin*, in *Janis* the Supreme Court determined, based on the facts of the case, the federal tax proceeding was not within the state law enforcement officer's "zone of primary interest" at the time of the Fourth Amendment violation and, therefore, suppressing the evidence in the federal tax proceeding would have little deterrent effect. The Court noted that the intersovereign context of the case (*i.e.*, the evidence was seized by one sovereign and the tax was assessed by another) made the deterrent effect "highly attenuated." *Janis*, 428 U.S. at 457-58. Thus, the Court declined to suppress the illegally seized evidence in the federal tax proceeding because doing so was unlikely to deter future unconstitutional conduct.

Other courts have interpreted *Janis'* "zone of primary interest" analysis to require the examination of both the nature of the second proceeding and whether the context was intrasovereign or intersovereign. See, *e.g.*, *Grimes v. C.I.R.*, 82 F.3d 286, 289-90 (9th Cir. 1996) (examining whether the context was intersovereign or intrasovereign and the nature of the proceedings and concluding that even though the seizing agency, the FBI, and the assessing agency, the IRS, were part of the same sovereign, there was little deterrent effect); *Wolf v. C.I.R.*, 13 F.3d 189, 194-95 (6th Cir. 1993) (stating that of the two considerations, the nature of the proceeding is more crucial and it is generally unlikely evidence seized in a criminal investigation should be suppressed in a secondary civil proceeding but that a court should consider a relationship between the two agencies and a resource sharing statutory scheme); see also *Tirado*, 689 F.2d at 314 (finding that official objective of search was to investigate crime and there were no facts, such as an agreement between seizing agency and assessing agency, calling officers' mo-

tivations into question, so deterrent purpose not served by exclusion).

Notably, in granting summary judgment to KDOR based on its refusal to consider application of the exclusionary rule, COTA implicitly recognized the potential relevance of facts advanced by Burch regarding the officer's zone of primary interest in this case. Citing K.S.A. 2012 Supp. 79-5211 and its directive to KDOR to remit 75 percent of collected assessments to the law enforcement agency that conducted the investigation, COTA noted: "On its face, this revenue-sharing arrangement encourages collusive and untempered conduct by law enforcement and government revenue agents. Without an evidentiary remedy to offset the statute's pernicious incentives, the integrity of the judiciary's role in protecting against unlawful police conduct is undermined."

Other jurisdictions have reached differing results when applying the zone of primary interest analysis. Some courts, after applying the analysis, have found the exclusionary rule inapplicable. See, *e.g.*, *Adamson v. C.I.R.*, 745 F.2d 541, 546 (9th Cir. 1984) (federal tax deficiency proceedings were not within the zone of primary interest of state police officers in search of evidence of a crime); *Turner v. State Dept. of Revenue*, 643 So. 2d 568, 569 (Ala. 1994) (finding exclusionary rule inapplicable because purpose of tax is economic, proceeding is not criminal or quasi-criminal, and tax may be imposed regardless of conviction of dealer); *Valdez v. Dept.of Revenue, State*, 622 So. 2d 62, 63 (Fla. Dist. App. 1993) (exclusionary rule not applicable to administrative civil tax proceeding because Fourth Amendment violation not egregious); *State, Indiana Dept. of Revenue v. Adams*, 762 N.E.2d 728, 731-33 (Ind. 2002) (costs of applying exclusionary rule, including the frustration of the State's ability to exercise its power to tax and the cost of lost evidence, outweigh its limited benefits; police would not be significantly deterred by prospect of exclusion of evidence in a civil tax proceeding because their primary concern is enforcement of criminal laws, not tax code); *Kivela v. Treasury Dep't*, 449 Mich. 220, 239, 536 N.W.2d 498 (1995) (concluding evidence improperly seized may be the basis of independent civil tax assessment pro-

ceeding in the absence of direct evidence of bad faith, collusion between agencies, or unethical behavior by law enforcement).

In contrast, other courts applying the zone of primary interest analysis applied the exclusionary rule based on its deterrent benefits. See, *e.g.*, *Vara v. Sharp*, 880 S.W.2d 844, 852 (Tex. App. 1994) (concluding additional deterrence would be achieved by applying exclusionary rule to civil tax proceeding where Texas Controlled Substances Tax Act provided for cooperation between seizing agency and assessing agency including resource sharing, prosecutor must approve any settlement, and prosecutor could request proceedings be deferred); *Sims v. State Tax Com'n*, 841 P.2d 6, 13-15 (Utah 1992) (holding exclusionary rule applied to civil proceeding when proceeding was quasi-criminal and law enforcement entities were financially motivated to acquire evidence of tax violations based on statutory provision for distribution of 60 percent of taxes, penalties, and interest collected to law enforcement agency). See generally 105 A.L.R.5th 1, 66-74.

We conclude that as applied in the context of a civil tax proceeding, the balancing test outlined in *Janis*, and implemented in *Martin*, requires consideration of whether the secondary civil tax proceeding was in the seizing officer's zone of primary interest at the time of the Fourth Amendment violation. Determining whether the secondary proceeding was in the officer's zone of primary interest requires consideration of the nature of the second proceeding—*i.e.*, whether civil or criminal—as well as other factors bearing on the potential motivation in the seizure. Such factors include, but are not limited to: (1) whether the proceedings occurred in an intrasovereign or intersovereign context; (2) whether the first and second proceedings were instigated by the same agency; (3) the relatedness of the objectives of the first and second proceedings; (4) the existence of any resource-sharing statutory scheme or explicit or implicit agreements between the entities or agencies involved; and (5) statements made by the officer regarding his or her motivation in conducting the search. Additionally, the balancing test requires consideration of the egregiousness of the officer's conduct.

If COTA determines the second proceeding was not within the officer's zone of primary interest at the time of the Fourth Amendment violation, there is little deterrent effect to justify suppressing the evidence in the second proceeding, and the drugs need not be suppressed. If there is deterrent effect in suppressing the evidence in the second proceeding, that potential deterrence should be weighed against the costs of losing probative evidence before determining whether the exclusionary rule applies to suppress the illegally seized drugs.

## CONCLUSION

We conclude COTA erroneously determined that K.S.A. 2012 Supp. 79-5205(b) precluded it from considering application of the exclusionary rule to the Director's assessment of taxes against Burch. Based on this erroneous conclusion, COTA improperly granted summary judgment to KDOR, disregarding Burch's factual arguments. Therefore, we remand this case to COTA to consider application of the exclusionary rule to the circumstances of this case.

However, it is unclear from the record whether Burch had an adequate opportunity to conduct discovery on the issue of application of the exclusionary rule. Thus, on remand, COTA must first determine the scope and duration of additional discovery, if any. Once any additional discovery is completed, COTA should consider application of the exclusionary rule by applying the factors outlined above to determine whether the tax assessment proceeding was within the officer's zone of primary interest at the time of the Fourth Amendment violation. If so, COTA must then consider whether the deterrent benefits of suppression outweigh its heavy costs.

Reversed and remanded with directions.