No. 127,431

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Revenue Neutral Complaint
of Kenneth L. Corbet in Shawnee County, Kansas.

SYLLABUS BY THE COURT

1.

A court's review of the Board of Tax Appeals' application and interpretation of the law is unlimited and performed without deference to the agency.

2.

The plain language of K.S.A. 2023 Supp. 79-2988 does not permit substantial compliance with the requirements of the statute; actual compliance with the statute is required.

3.

In this case, the procedural requirements in K.S.A. 2023 Supp. 79-2988(b)(4) for a governing body to exceed the revenue neutral tax rate are construed and applied.

Appeal from the Board of Tax Appeals. Oral argument held October 14, 2025. Opinion filed December 5, 2025. Reversed.

*Justin J. Johl*, of Shook, Hardy & Bacon LLP, of Kansas City, Missouri, and *Jessica A.E. McKinney*, pro hac vice, of the same firm, for appellant Shawnee County Board of Commissioners.

*Robert E. Duncan II*, of R.E. "Tuck" Duncan, Attorney at Law LLC, of Topeka, for appellee Kenneth L. Corbet.

Before M ALONE, P.J., C OBLE, J., and S EAN M.A. H ATFIELD, District Judge, assigned.

M ALONE, J.:  The Shawnee County Board of Commissioners (Board) appeals an order of the Board of Tax Appeals (BOTA) nullifying the Board's decision to exceed the revenue neutral tax rate for 2024. Following a taxpayer's complaint of the Board's decision to exceed the revenue neutral tax rate—the tax rate that would generate the same amount of property tax revenue as the prior year—BOTA found that the Board had failed to follow the procedural requirements of K.S.A. 2023 Supp. 79-2988(b)(4). More specifically, BOTA concluded that the Board failed to vote "at the public hearing" where taxpayers had an opportunity to provide public comment and did not properly adopt a "resolution or ordinance" to exceed the revenue neutral tax rate.

On appeal, the Board argues that BOTA misinterpreted and misapplied K.S.A. 2023 Supp. 79-2988(b)(4), and that the Board complied with all statutory requirements to exceed the revenue neutral tax rate. The Board also argues that even if we find that it failed to strictly comply with all the requirements of K.S.A. 2023 Supp. 79-2988(b)(4), the statute permits substantial compliance with its procedural requirements.

We find that the plain language of K.S.A. 2023 Supp. 79-2988 does not permit substantial compliance with the requirements of the statute; actual compliance with the statute is required. But for the reasons explained below, we conclude that the Board actually complied with the procedural requirements of the statute by voting to exceed the revenue neutral tax rate at a public hearing and adopting the measure by resolution or ordinance. Thus, we reverse BOTA's order granting the taxpayer's complaint.

F ACTUAL AND P ROCEDURAL B ACKGROUND

In 2023, the Board—which consists of three members:  Commissioners Bill Riphahn, Kevin Cook, and Aaron Mays—proposed a budget for Shawnee County,

2

Kansas' tax year 2024 that would require the Board to increase the revenue neutral rate (RNR) for 2024. The Board expressed its intent to do so at a regularly scheduled meeting on July 20, 2023, and it instructed the County Clerk to give notice of a public hearing on the matter under K.S.A. 2023 Supp. 79-2988(b)(1). Thereafter, a notice of hearing, titled Resolution No. 2023-45, was published explaining that the public hearing would be held on August 21, 2023, at 5:30 p.m. in the Board's chambers in Topeka. The County Clerk also mailed notices of the hearing to all taxpayers identifying Shawnee County's RNR, the proposed tax rate, and all other information required by K.S.A. 2023 Supp. 79-2988(b)(2).

On August 21, 2023, the Board held its public hearing. Commissioner Riphahn opened the meeting with the Pledge of Allegiance. Commissioner Riphahn then welcomed the audience, explained that the meeting was "a public hearing for the 2024 budget," and introduced the County Appraiser and County Administrative Services Director, who provided special reports about the RNR. Commissioner Riphahn made some introductory statements and then made a "motion to open" the hearing to public comment about the proposed increase above the RNR. For more than two hours, 30 members of the public gave their feedback about the Board potentially exceeding the RNR and their opinions about various other tax-related matters. After the final taxpayer finished her comments, Commissioner Riphahn asked if anyone else wanted to speak. No other members of the public came forward to speak.

Signaling a close of the public comments, Commissioner Riphahn made some brief comments about taxation and then questioned, "I think we have to vote to end the meeting?" Commissioner Cook responded, "Yeah, vote to close the public hearing." The County Clerk repeatedly whispered an interjection, "Close the RNR hearing. . . . You're closing the RNR hearing." Commissioner Riphahn could not hear what she was saying but Commissioner Cook proceeded to make a "motion to close the RNR hearing," which the Board unanimously approved via a voice vote.

3

After the Board approved the motion to close, some of the taxpayers in attendance began to filter out of the room. Other members of the audience approached the dais. Commissioner Mays briefly stepped out of the room while Commissioners Riphahn and Cook spoke with meeting attendees. Commissioner Mays returned to the room and the Commissioners then sat back down in their designated seats. The doors to the Board's chambers were never closed during the break.

Following this break, which lasted for about four minutes, Commissioner Riphahn made "a motion that we reopen the meeting." In the time between the motion to close and the motion to reopen, security footage shows that about 11 people left the meeting room—26 people were seated when the motion to close was made and 15 remained seated when the meeting was reopened. There was no Pledge of Allegiance or any other ceremonial reopening of the meeting. Commissioner Cook then stated, "Given statements made by members of the public regarding the statute for the revenue neutral rate, I make a motion that Shawnee County will be exceeding the revenue neutral rate that has been posted for the 2024 budget." All three members of the Board then voted, via a roll call, to pass the motion. Commissioner Riphahn then moved to "adjourn" the meeting and the motion passed unanimously. Commissioner Riphahn then stated, "We are adjourned."

On August 24, 2023, at a regular meeting, the Board adopted a written resolution to exceed the RNR. The minutes stated:  "Commissioner Mays moved approval of Resolution No. 2023-56 exceeding the revenue neutral rate in its property tax levy for budget year 2024. Commissioner Riphahn seconded the motion. The roll call was taken by the County Clerk as follows:  Riphahn-YES, Cook-YES, Mays-YES."

On October 27, 2023, Kenneth L. Corbet filed a "Revenue Neutral Complaint" in which he alleged the Board had misled the public and failed to comply with 2023 Supp. K.S.A. 79-2988(b)(4) when it voted to exceed the RNR because the Commissioners did

4

not vote at a public hearing and, when they did vote, they did not actually pass a resolution or ordinance. On December 22, 2023, BOTA held a hearing on the complaint at which both the Board and Corbet submitted testimony and exhibits. Corbet submitted written statements from some taxpayers who had attended the public hearing on August 21, 2023, stating that they believed it had been adjourned when Commissioner Riphahn moved to close the public comment session. Both parties also filed post-hearing briefs.

On February 20, 2024, BOTA entered its order, reversing the Board's decision to exceed the RNR. The order stated that "[t]he parties stipulated to the admission of all exhibits offered at the BOTA hearing, and the testimony and evidence presented by the parties established that the facts underlying this matter are largely undisputed." After summarizing the evidence, BOTA found that the Board had failed to comply with two requirements of K.S.A. 2023 Supp. 79-2988(b)(4): (1) to vote on the measure to exceed the RNR "at the public hearing" where taxpayers had an opportunity to provide public comment on such measure; and (2) to adopt such measure by "resolution or ordinance."

As for the first requirement, BOTA found that the Board's "motion to close" following the taxpayer comment session had effectively adjourned the public meeting, and its subsequent vote on the motion to exceed the RNR had "occurred at a second meeting." BOTA explained that "[a] motion to close, as made by Commissioner Cook in the August 21, 2023, meeting, is not a motion type recognized in [Robert's Rules of Order]" which governed the Board's meetings. BOTA observed there is some overlap between the concepts of an *adjournment* and a *recess* but "the context in which the motion [to close] was made and the activity that occurred thereafter" indicated that the Board had adjourned—that is, ended the public meeting. To support this conclusion, BOTA pointed to the testimony of the taxpayers in attendance who believed that the meeting was over. BOTA found that had the break in the meeting been merely a "recess" as defined in Robert's Rules of Order, then "no motion, vote, opening ceremony, or any other formality would have been necessary to resume business at the point where it was

5

left off." As such, BOTA found that when the Board reopened the meeting, it had actually started a second meeting (with no public notice or taxpayer comment period) and therefore did not satisfy the requirement to vote at the public meeting.

Next, BOTA explained that even if the Board's motion to close were construed as a recess rather than an adjournment, the Board failed to adopt a "resolution or ordinance" when it voted on Commissioner Cook's "motion" to exceed the RNR. BOTA reasoned that the Board's "majority roll call vote adopted only a *motion* to exceed the revenue neutral rate for the 2024 budget" and that a motion was not the same thing as either a *resolution or ordinance* as mandated by K.S.A. 2023 Supp. 79-2988(b)(4). Likewise the Board's adoption of the written resolution to exceed the RNR at its next regular meeting did not solve the problem because that action was not taken at the public hearing where taxpayers had an opportunity to provide public comment on the measure.

Finally, BOTA declined to find that the Board's actions could be approved as being in substantial compliance with the requirements of K.S.A. 2023 Supp. 79-2988(b). BOTA explained that it was bound to a strict construction of tax statutes and that it was "not vested with the equitable authority to correct [the Board's] action to reflect what it may have intended." And even if it had such authority, BOTA found that such a ruling would conflict with the plain language of the statute: "K.S.A. 79-2988(c)(1) specifies that '[a]ny governing body subject to the provisions of this section that does not *comply* with subsection (b) shall refund to taxpayers any property taxes over-collected based on the amount of the levy that was in excess of the revenue neutral rate.'"

Because BOTA found the Board had failed to comply with the statutory requirements of K.S.A. 2023 Supp. 79-2988(b)(4) to exceed the RNR, it ordered the Board to "refund to its taxpayers any property taxes over-collected based on the amount of the levy that was in excess of the revenue neutral rate, or reduce the levy on any uncollected taxes to the revenue neutral rate." The Board timely appealed BOTA's order.

6

The Board argues that BOTA erroneously concluded that it failed to follow the statutory requirements of K.S.A. 2023 Supp. 79-2988(b)(4) when it voted to exceed the RNR at the August 21, 2023 hearing. More specifically, the Board contends that BOTA erred in finding (1) that it did not vote on the measure to exceed the revenue neutral rate "at the public hearing" where taxpayers had an opportunity to provide public comment, and (2) that the Board did not adopt the measure to exceed the RNR via a "resolution or ordinance." The Board also asserts that the statute permits substantial compliance with its requirements. Corbet maintains BOTA properly construed and applied the requirements of K.S.A. 2023 Supp. 79-2988(b)(4) and urges this court to affirm BOTA's ruling.

The Kansas Judicial Review Act (KJRA), K.S.A. 77-601 et seq., provides the exclusive means of judicial review of state agency action, including actions taken by BOTA. See K.S.A. 77-603(a) (noting the KJRA "applies to all agencies and all proceedings for judicial review and civil enforcement of agency actions not specifically exempted by statute"); K.S.A. 77-606 ("[T]his act establishes the exclusive means of judicial review of agency action."); K.S.A. 2023 Supp. 74-2426(c). The Board, as the party challenging BOTA's decision, carries the burden to show its invalidity. K.S.A. 77-621(a). The KJRA permits judicial relief only for statutorily enumerated reasons, including when "the agency has erroneously interpreted or applied the law." K.S.A. 77-621(c)(4). Relevant to the Board's argument that BOTA erroneously interpreted or applied the law, "[a] court's review of BOTA's application and interpretation of the law is unlimited and performed without deference to the agency." *In re Equalization Appeal of Walmart Stores, Inc.*, 316 Kan. 32, 46, 513 P.3d 457 (2022).

This case turns on the interpretation and application of K.S.A. 2023 Supp. 79-2988, especially subsection (b)(4). Statutory interpretation presents a question of law

over which appellate courts have unlimited review. *Nicholson v. Mercer*, 319 Kan. 712, 714, 559 P.3d 350 (2024). The most fundamental rule of statutory construction is that the intent of the Legislature governs. *H.B. v. M.J.*, 315 Kan. 310, 320, 508 P.3d 368 (2022). Legislative intent must first be ascertained through the statutory language, giving common words their ordinary meanings. *In re Wrongful Conviction of Sims*, 318 Kan. 153, 158, 542 P.3d 1 (2024). Only when the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history to construe the Legislature's intent. *Chalmers v. Burrough*, 314 Kan. 1, 8, 494 P.3d 128 (2021).

K.S.A. 2023 Supp. 79-2988(b) provides the specific procedures that the governing body of a taxing subdivision, such as the Board, must follow in order to levy a tax rate in excess of the RNR. The term "revenue neutral rate" means "the tax rate for the current tax year that would generate the same property tax revenue as levied the previous tax year using the current tax year's total assessed valuation." K.S.A. 2023 Supp. 79-2988(f)(2).

K.S.A. 2023 Supp. 79-2988(b)(1)-(4) contains the procedural requirements that a taxing authority must follow. K.S.A. 2023 Supp. 79-2988(b)(1) requires the publication of a notice of the intent to exceed the RNR. Subsection (b)(2) requires the governing body to notify the county clerk of its intent to exceed the RNR, the date, time, and location of a public hearing, and the proposed tax rate. Subsection (b)(3) requires that the public hearing at which the taxing subdivision will consider exceeding the RNR be held between August 20 and September 20 and that taxpayers be given the opportunity to present oral testimony at that public hearing. Finally, K.S.A. 2023 Supp. 79-2988(b)(4) requires the governing body to adopt, by majority roll call vote at the public hearing, a resolution or ordinance to exceed the RNR. Subsection (b)(4) states in part:

> "A majority vote of the governing body, *by the adoption of a resolution or ordinance* to approve exceeding the revenue neutral rate, shall be required prior to adoption of a proposed budget that will result in a tax rate in excess of the revenue

neutral rate. Such vote of the governing body shall be conducted *at the public hearing* after the governing body has heard from interested taxpayers and shall be a *roll call vote*." (Emphases added.) K.S.A. 2023 Supp. 79-2988(b)(4).

Here, there is no dispute that the Board complied with subsections (b)(1), (b)(2), and (b)(3). The Board provided notice of its intent to exceed the RNR to the taxpayers and held a public hearing. The parties' dispute revolves around BOTA's conclusion that the Board failed to follow two of the requirements embedded in subsection (b)(4): First, whether the Board voted to exceed the RNR "at the public hearing" where taxpayers had an opportunity to provide public comment. Second, whether the Board's vote on a motion to exceed the RNR constituted the adoption of a "resolution or ordinance." Before we address the requirements under K.S.A. 2023 Supp. 79-2988(b)(4), we will consider the Board's assertion that the statute permits substantial compliance with its requirements.

*Is substantial compliance sufficient to satisfy the statutory requirements?*

The Board contends that K.S.A. 2023 Supp. 79-2988(b)(4) only requires substantial compliance with its procedural requirements to exceed the revenue neutral rate. That is, the Board contends that even if BOTA correctly concluded that the Board failed to pass a resolution or ordinance by voting at the public meeting, its decision to exceed the revenue neutral rate should have been upheld because it complied with the spirit and intent of the law. Corbet does not directly respond to the Board's argument beyond briefly stating that it would be "absurd" for this court to find that the Board "substantially complied with . . . the spirit, intent, and reasonable objective of the statute."

In its order, BOTA rejected the Board's contention that K.S.A. 2023 Supp. 79-2988 permits substantial compliance with the requirements of subsection (b) on two grounds. First, BOTA explained that it was "not vested with the equitable authority to correct the [Board's] action to reflect what it may have intended." Second, BOTA found that subsection (c) of the statute appears to demand strict compliance. As such, BOTA

9

reasoned that a finding that the Board had substantially complied with the statute would be contrary to the plain language of the statute.

Whether K.S.A. 2023 Supp. 79-2988 permits substantial compliance with its procedural requirements is a question of statutory interpretation subject to unlimited review. See *In re Tax Appeal of Burch*, 296 Kan. 713, 721, 294 P.3d 1155 (2013). And, as stated above, statutory interpretation begins with the statute's text, giving words their common meanings. "Absent ambiguity or uncertainty in the language of a statute, a court is not free to read into the statute something not readily found in it." *Via Christi Regional Medical Center, Inc. v. Reed*, 298 Kan. 503, Syl. ¶ 4, 314 P.3d 852 (2013); *In re Tax Appeal of Burch*, 296 Kan. at 722 ("[W]e will not speculate as to . . . legislative intent . . . and will not read into the statute something not readily found in it.").

"Substantial compliance means compliance in respect to the essential matters necessary to assure every reasonable objective of the statute." *Sleeth v. Sedan City Hospital*, 298 Kan. 853, 865, 317 P.3d 782 (2014). The Board opines that "substantial compliance is baked into Robert's Rules and the procedure that governs this case." But the Board's argument focuses almost exclusively on the provisions of Robert's Rules, not the statute's language. Even though the Board fulfilled the spirit, intent, and reasonable objective of the statute, the fact that Robert's Rules embraces substantial compliance with its procedures does not determine whether K.S.A. 2023 Supp. 79-2988 does.

It is undisputed that K.S.A. 2023 Supp. 79-2988 does not contain any provision suggesting that substantial compliance satisfies the procedural requirements for a taxing subdivision to decide to exceed the RNR. As the Kansas Supreme Court has observed, "when the legislature has intended for the courts to require no more than substantial compliance with statutory requirements, it has had no trouble expressing this intention." *Via Christi Regional Medical Center, Inc.*, 298 Kan. at 518; see, e.g., K.S.A. 2023 Supp. 12-105b(d)(1) ("In the filing of a notice of claim, substantial compliance with the

10

provisions and requirements of this subsection shall constitute valid filing of a claim."). Any language evincing such an intention is lacking from K.S.A. 2023 Supp. 79-2988.

The lack of any provision allowing for substantial compliance standing alone would likely be fatal to the Board's claim, but the conclusion that strict compliance is required is buttressed by K.S.A. 2023 Supp. 79-2988(c)(1). As noted by BOTA, subsection (c)(1) is the only portion of the statute that references compliance with its procedural requirements at all. And it provides that "[a]ny governing body subject to the provisions of this section *that does not comply with subsection (b)* shall refund to taxpayers any property taxes over-collected based on the amount of the levy that was in excess of the revenue neutral rate." (Emphasis added). K.S.A. 2023 Supp. 79-2988(c)(1). In other words, the Legislature stated that noncompliance with subsection (b) is not permissible. Thus, the plain language of the statute unambiguously demands a taxing authority to comply with its procedural requirements to exceed the RNR.

K.S.A. 2023 Supp. 79-2988(c)(1) is unambiguous—it plainly states that if a governing body, such as the Board, "does not comply with subsection (b)" it must refund any amounts collected over the revenue neutral rate. Absent ambiguity or uncertainty in the statute, an appellate court cannot read in a substantial compliance escape hatch simply because the Board provided notice and held a public hearing. The Board was required to comply with the procedural requirements of the statute—not just achieve the objective of the statute. The Board's argument that the statute contemplates substantial compliance being sufficient is not supported by the plain language of K.S.A. 2023 Supp. 79-2988.

*Did the Board vote "at the public hearing" as required by the statute?*

We now turn to the first disputed issue under K.S.A. 2023 Supp. 79-2988(b)(4) on whether the Board voted to exceed the RNR "at the public hearing" where taxpayers had an opportunity to provide public comment about the measure. The Board argues that

11

BOTA erred when it found that the vote to exceed the RNR did not occur at the public hearing because the Board's motion to close the meeting operated as an adjournment, effectively creating two separate meetings when it reopened the meeting about four and a half minutes later. That is, the Board argues that it voted at the public hearing because the break was merely a recess—it did not end the meeting. Corbet maintains that BOTA correctly determined that the Board adjourned the public meeting before voting on the RNR and that the Board's attempt to reopen the meeting started a second meeting.

While the Board frames the issue as a matter of statutory interpretation, Corbet attacks it more as a question of whether BOTA's factual findings are supported by substantial evidence. We disagree with Corbet's assertion that resolution of this case turns on BOTA factual findings. The parties stipulated to the admission of all exhibits offered at the agency hearing, and BOTA's order begins by noting "the testimony and evidence presented by the parties established that the facts underlying this matter are largely undisputed." After all, the entire public hearing on August 21, 2023, including the break between the public comment session and the Board's vote, is captured on video either by the Commission's livestream recording of the meeting or the security video included in the record. There is no factual dispute about what happened at the hearing.

BOTA's ruling that the Board failed to vote to exceed the RNR at the public hearing where taxpayers had an opportunity to provide public comment was a legal conclusion, not a factual finding. The Board seeks relief under K.S.A. 77-621(c)(4) alleging that BOTA has erroneously interpreted or *applied* the law. Resolution of this appeal turns on whether BOTA erroneously applied the provisions of K.S.A. 2023 Supp. 79-2988(b)(4) to the undisputed facts in the case.

The dispute between the parties hinges on the proper classification of the break the Board took after listening to the taxpayers' public comment and the Board's vote to exceed the RNR—that is, whether that break ended the public meeting or not. In

12

answering this question, BOTA relied heavily on Robert's Rules of Order. Section 2-2(b) of the Shawnee County Code of Ordinances provides that "[m]eetings of the board of county commissioners will be governed by Robert's Rules of Order unless in conflict with commission rules." Despite the emphasis on these procedural guidelines by BOTA, the text of K.S.A. 2023 Supp. 79-2988 contains no reference to Robert's Rules.

BOTA analyzed whether the Board voted at the public hearing by questioning "whether the August 21, 2023, meeting was *adjourned* prior to [the Board's] vote . . . to exceed the RNR for the 2024 budget." (Emphasis added.) In other words, it questioned whether the Board had effectively ended the public meeting before it voted to exceed the RNR. To answer this question BOTA first turned to Robert's Rules and then analyzed the context of the Board's motion to close and reopen the meeting. On appeal, the parties focus on the distinction made between an adjournment and a recess by Robert's Rules.

Under Robert's Rules, a recess is defined as "a short intermission or break within a meeting that does not end the meeting or destroy its continuity as a single gathering, and after which proceedings are immediately resumed at the point where they were interrupted." Robert's Rules of Order § 8:2 (12th ed. 2020). Conversely, "[a]n adjournment (that is, the act of the assembly's adjourning) terminates a meeting." § 8:2. Robert's Rules further provide:  "To *adjourn* means to close the meeting. . . . The adoption of any motion to adjourn closes the meeting immediately unless the motion specifies a later time for adjourning." § 21:1. Finally, the Rules indicate that "[r]egardless of the type of motion by which it is voted to adjourn, the meeting is not closed until the chair has declared that the meeting 'is adjourned.'" § 21:12.

Despite prescribing these different definitions, Robert's Rules recognizes that "[t]he distinction between recess and adjournment may in some cases become thin so that it must be judged in the individual context." § 8:7. To that end, Robert's Rules suggest several factors to determine whether a break constitutes a recess or adjournment,

13

including the duration of the break, the extent of dispersion of the members of the meeting, whether there was any declaration of "adjournment," and whether new opening ceremonies are performed after the break. § 8:7.

To begin, it is undisputed that the break between the Board's motion to close and then reopen the meeting lasted about four and a half minutes. The security footage of the meeting room shows that only one of the three Commissioners left the dais during the break. Commissioner Mays briefly stepped out of the room while Commissioners Riphahn and Cook spoke with meeting attendees who approached them. While some taxpayers left the room during the break, the security footage shows that 26 people were seated in the gallery before the break and 15 people remained seated in the gallery after the break. The doors to the Board's chambers were never closed during the break. These facts suggest that the break in the meeting was more like a recess, not an adjournment.

Commissioner Cook called for the break by making a "motion to close the RNR hearing" which the Board unanimously approved via a voice vote. The recording shows that the Commission staff was trying to whisper the precise words the Commission was supposed to use to end the public comment session of the meeting. It would have been clearer had one of the Commissioners simply moved to close the public comment session of the meeting. But from the context of the entire hearing, it appears that the Commission was attempting to close only the public comment session of the meeting, just as a "motion to open" had been made to begin the public comment session of the meeting. But the most significant fact of all is that no Commissioner moved to "adjourn" the meeting before the break was taken, and the chair did not announce that the meeting was "adjourned" until after the Board had completed its roll call vote to exceed the RNR.

After the break, Commissioner Riphahn made "a motion that we reopen the meeting." Although BOTA likened this action to a formal opening of a new meeting, there was no Pledge of Allegiance or opening ceremony when the meeting resumed as

had been used by the Commission when the public hearing commenced. This fact suggests that the Board was merely resuming the business of the public hearing after taking a brief recess. The Board immediately proceeded with its roll call vote to exceed the RNR. Commissioner Riphahn then moved to "adjourn" the meeting and the motion passed unanimously. Commissioner Riphahn then stated, "We are adjourned."

BOTA's legal conclusion that the Board adjourned the public meeting before the break and then started a "second meeting" after the break is not supported by the undisputed facts. The Board's motion to close the public comment portion of the meeting and then reopen the meeting for a vote after a roughly four-minute break, during which the Commissioners and many members of the public and press did not leave the meeting room, is more properly classified as a recess, not an adjournment. Thus, the Board fulfilled the procedural requirement to conduct its vote at the public hearing. We agree with the Board that BOTA erroneously applied the provisions of K.S.A. 2023 Supp. 79-2988(b)(4) to the undisputed facts on whether the Board voted to exceed the RNR at the public hearing. As a result, we find the Board has met its burden to show it is entitled to relief from BOTA's order on this issue under K.S.A. 77-621(c)(4).

*Did the Board adopt a "resolution or ordinance" to exceed the RNR?*

Next, the Board argues that BOTA erroneously concluded that it did not adopt a "resolution or ordinance" to approve exceeding the RNR because its roll call vote adopted only a "motion" to do so. At the end of the August 21, 2023 meeting, Commissioner Cook stated, "Given statements made by members of the public regarding the statute for the revenue neutral rate, I make a motion that Shawnee County will be exceeding the revenue neutral rate that has been posted for the 2024 budget." All three members of the Board then voted, via a roll call, to pass the motion.

15

In its order, BOTA found that K.S.A. 2023 Supp. 79-2988(b)(4) "requires a majority roll call vote adopting a *resolution or ordinance* exceeding the revenue neutral rate for a given budget year. The [Board's] majority roll call vote adopted only a *motion* to exceed the revenue neutral rate for the 2024 budget." The Board maintains that BOTA's semantic construction of K.S.A. 2023 Supp. 79-2988(b)(4) is erroneous and misapplies the statutory language. Corbet contends that BOTA correctly interpreted the terms "resolution or ordinance" as being distinct from a "motion."

Perhaps because K.S.A. 2023 Supp. 79-2988 does not define either "resolution" or "ordinance," the parties spend considerable time discussing Robert's Rules, guidance published by the Kansas Department of Administration, treatises on municipal ordinances, and other Kansas statutes. In the context of parliamentary procedure, a "resolution" is defined as "a formal statement of opinion or determination adopted by an assembly or other formal group." Webster's New World Collegiate Dictionary 1237 (5th ed. 2018). "Ordinance" is defined as "a direction or command of an authoritative nature" and "a governmental, now esp. municipal, statute or regulation." Webster's New World Collegiate Dictionary 1029 (5th ed. 2018). And a "motion" is defined as "a proposal; suggestion; esp., a proposal formally made in an assembly or meeting." Webster's New World Collegiate Dictionary 954 (5th ed. 2018). But as Corbet concedes, Robert's Rules do not require strict use of "resolution" language for a motion to qualify as a resolution.

Turning to legal definitions of the terms, Black's Law Dictionary defines "resolution" as used in parliamentary law as "[a] main motion that formally expresses the sense, will, or action of a deliberative assembly." Black's Law Dictionary 1571 (12th ed. 2024). Black's Law further defines a "main motion" as "[a] motion that brings business before a meeting." Black's Law Dictionary 1214 (12th ed. 2024). Motion is defined as "[a] proposal made in a meeting, in a form suitable for its consideration and action, that the meeting (or the organization for which the meeting is acting) take a certain action or view." Black's Law Dictionary 1213 (12th ed. 2024). In contrast, "ordinance" is defined

16

as "[a]n authoritative law or decree; specif., a municipal regulation, esp. one that forbids or restricts an activity." Black's Law Dictionary 1322 (12th ed. 2024).

When considering the common meanings of "resolution" and "ordinance" in comparison to a "motion," the semantic distinction drawn by BOTA lacks any justification. The simple fact that the Board did not use the words "resolution or ordinance" does not change the nature of its vote to exceed the RNR. In other words, what the Board called the vote to exceed the RNR does not matter; what matters is how the Board voted to exceed the RNR. The Board treated its official vote to exceed the RNR with more formality than a vote on a routine motion, proceeding with a roll call vote and not a voice vote, as expressly required by K.S.A. 2023 Supp. 79-2988(b)(4). All other motions made at the public hearing were adopted by a simple voice vote.

Corbet makes a new argument on appeal that the Board was required to sign a written resolution at the public hearing to satisfy the statutory requirement that the Board adopt a resolution or ordinance to exceed the RNR, citing various provisions of the Shawnee County Code governing resolutions. But this argument is unavailing for at least two reasons. First, the Shawnee County Code states that its provisions do not apply to resolutions—like the one in this case—involving appropriations or taxes. Shawnee County Code Section 1-10(11) ("Nothing in this Code or the resolution adopting this Code affects any . . . [r]esolution authorizing, levying or imposing taxes.").

Second, Corbet's argument is not supported by the plain language of the statute. The statute does not contain the word "written" before "resolution or ordinance." K.S.A. 2023 Supp. 79-2988(b)(4). Nor does it state that a written resolution or ordinance must be presented at the public hearing. The statute only requires that the measure be voted on at the public hearing after the governing body has heard from interested taxpayers and shall be a roll call vote. K.S.A. 2023 Supp. 79-2988(b)(4). If the Legislature intended that both a written resolution and a roll call vote occur at the public hearing, it could have added

17

language requiring both. Here, the Board formally adopted a written resolution to exceed the RNR at its next regular meeting on August 24, 2023, also by a roll call vote. This action was taken "prior to adoption of a proposed budget that will result in a tax rate in excess of the revenue neutral rate" as required by K.S.A. 2023 Supp. 79-2988(b)(4).

Giving words their ordinary meanings, the Board properly adopted a "resolution or ordinance" within the meaning of the statute when it conducted a roll call vote to exceed the RNR. The fact that a Commissioner made a "motion" to exceed the RNR rather than calling the measure a "resolution or ordinance" does not nullify the Board's actions. The record shows that the Board complied with the requirement to hold a public hearing to give taxpayers a chance to present their opinions and feedback on exceeding the RNR, and the Board formally adopted the measure with a roll call vote at that public hearing. We agree with the Board that BOTA erroneously applied the provisions of K.S.A. 2023 Supp. 79-2988(b)(4) to the undisputed facts on whether the Board adopted a "resolution or ordinance" to exceed the RNR. As a result, we find the Board has met its burden to show it is entitled to relief from BOTA's order on this issue under K.S.A. 77-621(c)(4).

Reversed.